𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

UNITED STEELWORKERS OF AMERICA, LOCAL 8417, ET AL.

V.

NEWPORT NEWS SHIPBUILDING AND DRY DOCK COMPANY

November 21, 1979.

Record No. 771634.

Present: All the Justices.

*Robert H. Stropp, Jr.* (*C. T. Neale, III; R. M. Brown, Jr.; Hudgins and Neale; Cooper, Mitch & Crawford,* on briefs), for appellants.

*Junius C. McElveen, Jr.* [D.C.] (*Ray J. Schoonhoven* [D.C.]; *Vincent F. Ewell; Seyfarth, Shaw, Fairweather & Geraldson* [D.C.], on brief) for appellee.

COCHRAN, J., delivered the opinion of the Court.

In this appeal, the question is whether the trial court, acting within the constraints of the pleadings, properly imposed punishment for violation of the terms of an injunction.

On April 1, 1977 Peninsula Shipbuilders' Association (PSA), asserting that it represented as exclusive bargaining agent the production and maintenance employees of Newport News Shipbuilding and Dry Dock Company (the Company), filed in the trial court a verified bill of complaint for injunctive relief against the United Steelworkers of America, Local 8417 (the Union). The complaint alleged that the Union, representing certain design-related employees, had commenced a strike against the Company on April 1, had established picket lines at Company entrances, and by threats and intimidation had hindered employees represented by PSA from entering and leaving the Company premises. By order entered on the same date, the trial court granted a temporary injunction, effective for 60 days, that restrained the Union and its members from picketing unlawfully and from interfering with the rights of employees represented by PSA to go to and from their work. On April 4, the Company was granted leave to intervene; L. L. Johnson, M. K. Trueblood, R. Taylor, and R. E. Price, individually and as officers of the Union, and unknown persons, were made subject to the temporary injunction; and the injunctive order was amended to include all the named defendants and to delineate in

greater detail the conduct that was thereby proscribed.

Subsequently, upon the Company's motion, an order was entered requiring the defendants to show cause why they should not be held in contempt for violation of the injunction. After an evidentiary hearing on May 17, 18, and 20, the trial court ruled that violations had been established. However, the court reserved imposition of sanctions to give the defendants an opportunity to purge themselves of contempt by showing their good faith in conducting the strike peaceably, and extended the injunction for the duration of the strike.

Pursuant to another show cause order entered upon motion of the Company and served upon the named defendants and J. D. Champion, Granville Diehl, Jr., and Archie D. Spivey, an evidentiary hearing was held on July 19 and 20. There was evidence that nonstriking employees had been threatened by some of the Union's officers and members, and that one worker had been assaulted and severely beaten by Champion and Diehl. The trial court, holding that the Union was responsible for these acts of its officers and members, found the Union and various individuals in contempt for violating the injunction, and fixed their penalties by judgment order entered July 21, effective August 5, 1977. The Union was fined $5,000. The court withheld imposition of any penalty against Johnson, the Union's president and chief negotiator, until the conclusion of the strike, unless otherwise ordered. Edward J. Halligan and Edward L. Haney, Jr., were fined $150 each, Ernest G. Surles and Howard P. Joyce $250 each, James R. Brennan $300, and Roy E. Price $500. J. D. Champion and Granville Diehl, Jr., were each fined $500 and sentenced to serve 30 days in jail. A motion to suspend the jail sentences was denied, and the court directed that all fines be paid to the Commonwealth. The Union and others against whom penalties were imposed have appealed the final order of the trial court.

The appellants contend that they were improperly tried for criminal contempt within the framework of a civil proceeding in which they were denied certain rights to which they would have been entitled in a criminal contempt proceeding.

■ Contempt proceedings prosecuted to preserve the power and vindicate the dignity of the court are criminal and punitive; those prosecuted to preserve and enforce the rights of private parties are civil, remedial, and coercive. *Local 333 B, United Marine Div.* v. *Commonwealth,* 193 Va. 773, 780, 71 S.E.2d 159, 163, *cert. denied,* 344 U.S. 893 (1952). The character and purpose of the punishment may determine the class of contempt, as stated in the landmark case

of *Gompers* v. *Bucks Stove & Range Co.,* 221 U.S. 418 (1911), as follows:

> It is not the fact of punishment but rather its character and purpose that often serve to distinguish between the two classes of cases. If it is for civil contempt the punishment is remedial, and for the benefit of the complainant. But if it is for criminal contempt the sentence is punitive, to vindicate the authority of the court. It is true that punishment by imprisonment may be remedial, as well as punitive, and many civil contempt proceedings have resulted not only in the imposition of a fine, payable to the complainant, but also in committing the defendant to prison. But imprisonment for civil contempt is ordered where the defendant has refused to do an affirmative act required by the provisions of an order which, either in form or substance, was mandatory in its character. Imprisonment in such cases is not inflicted as a punishment, but is intended to be remedial by coercing the defendant to do what he had refused to do. The decree in such cases is that the defendant stand committed unless and until he performs the affirmative act required by the court's order.
>
> \*   \*   \*
>
> On the other hand, if the defendant does that which he has been commanded not to do, the disobedience is a thing accomplished. Imprisonment cannot undo or remedy what has been done nor afford any compensation for the pecuniary injury caused by the disobedience. If the sentence is limited to imprisonment for a definite period, the defendant is furnished no key, and he cannot shorten the term by promising not to repeat the offense. Such imprisonment operates, not as a remedy coercive in its nature, but solely as punishment for the completed act of disobedience.

*Id.* at 441-443.

In *Gompers,* the United States Supreme Court also pointed out significant differences in the two kinds of proceedings. In a criminal contempt proceeding, the defendant is presumed to be innocent, he must be proved guilty beyond a reasonable doubt, and he cannot be compelled to testify against himself. *Id.* at 444. Moreover, a civil contempt proceeding is between the original parties to litigation and is instituted and tried as a part of the main cause; a criminal contempt proceeding is between the public and the defendant, and is not a part of the original cause. *Id.* at 445.

Thus, in *Local 333B, supra,* the employer, Virginia Ferry Corporation, was granted an injunction by the trial court that prohibited the union from striking except under certain conditions. A strike ensued in violation of the terms of the injunction, and the employer filed a petition in the pending cause against the union and two of its officers seeking entry of an order requiring the named defendants to show cause why they should not be punished for contempt. The trial court entered the show cause order, transferred the contempt proceeding from the equity to the law side of the court, and changed the style of the case to reflect that the Commonwealth had intervened as a party plaintiff to prosecute the union for criminal contempt. After hearing evidence the trial court imposed upon all three defendants fines payable to the Commonwealth and sentenced the two union officers to serve specified jail terms. Finding that the trial court had followed the proper procedure for conducting a criminal contempt hearing, and that sufficient evidence supported the convictions, we affirmed the judgment.

In the present case, the Company moved for show cause orders requiring the named defendants to answer for "civil contempt". However, the Company made no effort to obtain reimbursement from the defendants for any losses caused by the alleged violations of the injunction, and, indeed, introduced no evidence of pecuniary loss. The Company merely presented evidence of violations by the defendants of the terms of the injunction. The trial court thereupon imposed unconditional sanctions upon the defendants from which they could not purge themselves by future compliance with the injunction. These penalties could only be construed as punishment for past conduct. Without objection by the Company, the court made the fines payable to the Commonwealth, and fixed jail terms of specified duration. Counsel for the Company, conceding in oral argument before us that the trial court erred in imposing criminal contempt sanctions in a civil contempt proceeding, argued that we should nevertheless remand the case for another hearing to enable the Company to obtain relief upon proof of damages caused by the defendants' violations of the injunction.

We agree that the trial court committed reversible error in imposing criminal contempt penalties in a civil contempt proceeding, but we do not agree that the Company is entitled to another opportunity to prove damages that it never attempted to establish in a civil contempt proceeding in which it was the moving party. The Company, having willingly acquiesced in the improper conversion of the civil contempt hearing into a criminal contempt trial, may not now have the

proceeding reconverted for its benefit to the prejudice of the defendants. Accordingly, we will reverse the judgment of the trial court and dismiss the proceeding.

*Reversed and dismissed.*