## Salem

INTERNATIONAL UNION, UNITED MINE WORKERS
OF AMERICA, et al.

v.

CLINCHFIELD COAL COMPANY, et al.

Nos. 0790-89-3, 0904-89-3
1287-89-3, 1333-89-3
1629-89-3, 1743-89-3

Decided March 26, 1991

COUNSEL

Andrew Miller (James M. Haviland; James J. Vergara, Jr.; Robert H. Stropp, Jr.; William O. Shults; John A. Gibney, Jr.; Michael J. Passino; Dickstein, Shapiro & Morin; McIntyre, Haviland & Jordan; Vergara & Associates; General Counsel of International Union, United Mine Workers of America; Shuford, Rubin, Gibney & Dunn; Passino & Hildebrand, on briefs), for appellants.

(Karl K. Kindig; Stephen M. Hodges; Wade W. Massie; Clinchfield Coal Company; Penn, Stuart, Eskridge & Jones, on briefs), for appellees.

(William B. Poff; Clinton S. Morse; Frank K. Friedman; Agnis C. Chakravoty; Woods, Rogers & Hazlegrove, Counsel for John L. Bagwell, Special Commissioner), on Brief Amicus Curiae.

OPINION

KOONTZ, C.J.—This appeal arises from a series of contempt judgments and corresponding fines exceeding twenty million dollars entered by the Circuit Court of Russell County against the International Union and the Local District 28 Union of the United Mine Workers of America (Unions), appellants, at the request of Clinchfield Coal Company and Sea "B" Mining Company (Companies), appellees. For the reasons that follow, we vacate the fines imposed by the circuit court.

## I. Factual Background

The record in this case is voluminous. We summarize only the essential facts for purposes of this opinion.

On April 4, 1989, the Unions commenced a strike against the Companies in protest of alleged unlawful labor practices by the Companies. In response, on April 12, 1989, the Companies filed a bill of complaint in the circuit court alleging that the Unions and others acting in concert with them were violating Virginia's right to work law. The Companies sought an injunction to prohibit that conduct. On April 13, 1989, the circuit court issued an injunction and established picketing guidelines and prohibited certain strike-related activities, such as the use of tire puncturing devices. As the strike continued, the circuit court modified the injunction in an effort to prevent violations of the Companies' rights and Virginia's right to work law.

Notwithstanding the injunction, numerous acts involving violence and non-violence, which can only be described fairly as massive, were reported that were in violation of the injunction. As a result, the circuit court entered rules to show cause against the Unions. At the first show cause hearing, held on May 16, 1989, the court found there had been seventy-two separate violations of the injunction. Based on its findings in the May 16 hearing and without indicating the standard of proof being applied, the court by order entered on May 18 found the Unions in contempt and imposed fines on them totalling $616,000. The court suspended $400,000 of these fines conditioned on the Unions' paying the unsuspended portion within ten days and thereafter complying with the injunction. The fines were directed to be paid to the Commonwealth. The court also set a prospective fine schedule for future injunction violations whereby peaceful violations would result in $20,000 "civil" fines and violent violations would result in $100,000 "civil" fines.

A second contempt hearing was held on June 2, 1989, from which the court entered a second order adjudicating the Unions in contempt. Based on its findings that the Unions had continued to violate the injunction and in accordance with its previously set fine schedule, the court reinstated the suspended fines from its May 18 order and fined the Unions a total of $2,465,000, payable to the Commonwealth. In its order, the court stated that "the evidence

proves beyond a reasonable doubt that [the Unions] have intentionally violated" the injunction. However, the court also declared, "[i]t is the court's intention that these fines are civil and coercive." In the same order, the court set forth a new fine schedule "for the purpose of coercing the defendants to comply with the court's injunctions."

On July 27, 1989, the court entered a third contempt order wherein the court found that the Unions repeatedly violated the injunction through violent and non-violent acts, including the failure to use all lawful means to ensure compliance. During the hearing upon which this order was entered, the court again declared the standard of proof applied to the evidence was "beyond a reasonable doubt," but explained that it was doing so "out of an abundance of caution." Without adhering to its new fine schedule, the court imposed on the Unions fines totalling $4,465,000, payable to the Commonwealth, Russell County, and Dickenson County. Subsequently, in a hearing held on August 16, 1989, the court informed the Unions that they had no right to a jury trial because they were not being tried for criminal contempt and that "these were civil proceedings."

On August 29, 1989, the Companies filed their seventh motion for rule to show cause, which moved the court for a rule to show cause why the Unions should not be held in civil or criminal contempt and for "such other relief as the court deems appropriate." After issuing a rule to show cause and holding a hearing for the rule, the court entered a fourth contempt order in which it found beyond a reasonable doubt that the Unions had continued to violate the injunction. The court imposed on the Unions fines totalling $16.9 million, of which $13.5 million were made payable to the Commonwealth, Russell County, and Dickenson County. The remaining $3.4 million were directed to be paid to the Companies, even though the Companies did not present to the court any evidence of pecuniary losses.

In a fifth contempt order entered on October 9, 1989, the court found the Unions guilty beyond a reasonable doubt of 71 violations of the injunction and fined them $6.9 million, payable to the Commonwealth, Russell County, and Dickenson County. Once again, the court apparently imposed the fines without considering any evidence of pecuniary losses. In a hearing held on the same day, the court reiterated its position that the proceedings were

civil rather than criminal, and that it was using monetary means to coerce the Unions into compliance with the injunction.

## II. Procedural Background

Following the Unions' timely appeal to this Court, the Unions filed their initial brief asserting, in addition to numerous other issues, that the fines in question were criminal sanctions imposed in a civil proceeding and in violation of certain constitutional guarantees. In response, the Companies on brief asserted that the fines were coercive civil fines and were properly imposed. Prior to oral argument in this Court in support of their positions on brief, the parties settled the underlying strike and this litigation. By joint motion dated January 29, 1990, the parties moved the circuit court for entry of an order contemplating dissolution of the pending injunctions, vacation of all fines, including those at issue in this appeal, and dismissal of the litigation.

Thereafter, in accordance with the agreement with the Unions, the Companies filed in this Court a Statement of Position In Lieu of Brief and Motion to Withdraw. The Companies therein acknowledged the settlement of the strike and the litigation, supported the vacation of the fines, and because they "[could] no longer function as an adversary in this appeal" requested that they be dismissed as parties to this appeal. The Unions filed their reply brief in which, without abandoning their original position that the fines were criminal sanctions, they asserted that based on the parties' settlement this appeal should be dismissed as moot, with directions that the fines involved in this appeal be vacated, as contemplated by the parties' agreement.[1]

Oral argument was held in this Court on October 9, 1990. The Companies took no part in this hearing. Thereafter, and before a decision was reached in this Court, John L. Bagwell, Special Commissioner previously appointed by the circuit court to collect the fines imposed against the Unions, petitioned this Court to be made a party in these proceedings or in the alternative to be permitted to file a brief *amicus curiae*. We denied the request of Bagwell to be made a party, but permitted the filing of the *amicus*

---

[1] On brief it is now acknowledged that the trial court has denied the joint request to vacate the fines payable to the Commonwealth and Russell and Dickenson counties. The fines payable to the Companies have been vacated. We accept this acknowledgement only for the purpose of clarity in the procedural background of this case.

*curiae* brief. The Unions timely filed a reply brief.

## III.  The Issues

Initially, we were called upon to decide whether the fines involved in this appeal were criminal or civil sanctions for violation of the circuit court's injunction. The distinction between criminal and civil contempt sanctions has been the subject matter of many opinions from various state and federal courts and is a matter involving the difficult application of well-settled rules. We draw this distinction and apply these rules in *International Union, United Mine Workers v. Covenant Coal Corp.*, 12 Va. App. 135, 402 S.E.2d 906 (1991), decided this date, which involves litigation arising from the same labor dispute involved in this appeal. However, in this appeal it is not necessary, or appropriate, for us to determine whether the fines in question are criminal or civil because the result would be the same under the view we adopt. If determined to be criminal fines improperly imposed in a civil proceeding without the necessary constitutional protections, the fines could not stand. *United Steelworkers, Local 8417 v. Newport News Shipbuilding & Dry Dock Co.*, 220 Va. 547, 260 S.E.2d 222 (1979). Accordingly, for purposes of our decision here, we assume, without deciding, these fines are civil sanctions. The dispositive issue then becomes whether the settlement of the dispute and litigation between the parties requires that the civil fines imposed as a part of the injunction suit must be set aside. We turn now to address that issue.

## IV.  Discussion

██ The *amicus* brief brings this issue into focus. First, it is asserted, and we agree, that civil contempt sanctions may be subdivided into two sub-categories. Compensatory civil contempt sanctions, as the name suggests, compensate the plaintiff for losses sustained because of the defendant's non-compliance or disobedience of a court's order. Coercive civil contempt sanctions, again as the name suggests, are imposed to coerce a defendant into complying with the orders of a court. *See generally United States v. United Mine Workers*, 330 U.S. 258 (1947); *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418 (1911). In *Latrobe Steel Co. v. United Steelworkers*, 545 F.2d 1336 (3d Cir. 1976), the Court in addressing these sub-categories made the following helpful observations:

[C]ompensatory actions are essentially backward looking, seeking to compensate the complainant through the payment of money for damages caused by past acts of disobedience. Coercive sanctions, in contrast, look to the future and are designed to aid the plaintiff by bringing a defiant party into compliance with the court order or by assuring that a potentially contumacious party adheres to an injunction by *setting forth in advance the penalties the court will impose if the party deviates from the path of obedience* . . . .

[T]he court may levy a fine of a specified amount for past refusal to conform to the injunction, *conditioned, however, on the defendant's continued failure to obey*. The court may also specify that a disobedient party will be fined a certain amount for each day of non-compliance. Indeed, the methods that may be employed to coerce a recalcitrant party into compliance with an injunction are many and varied.

*Id*. at 1344 (emphasis added) (footnotes omitted).

With the exception of the initial unsuspended fines, the circuit court clearly imposed the type of coercive, conditional fines recognized in *Latrobe*. For purposes of distinguishing between compensatory and coercive civil sanctions, we need not consider the unsuspended fines which have obvious indications of criminal sanctions for past violations of the court's order. Nor need we consider the fact that the court did not adhere to its previously set fine schedule in the third contempt order for the purpose of drawing a distinction between compensatory and coercive civil fines. The Companies presented no evidence of losses resulting from the Unions' disobedience of the court's injunctive order. Without such evidence, the circuit court could not and did not seek to impose compensatory fines. Moreover, the voluminous record in this case makes it clear that the court imposed the fines in question to coerce compliance with its orders rather than to compensate the Companies. A review of the facts in the record which reflect the magnitude of the violations involved and the resulting impact on the operations of the Companies, as well as the communities at large, persuade us, as apparently they persuaded the circuit court, that fines of considerable magnitude were reasonably required to coerce compliance from the Unions. Consequently, we conclude that these fines were coercive civil fines, not compensatory civil fines.

The distinction between the two sub-categories of civil sanctions for contempt is relevant to the disposition of the ultimate issue in this appeal. Neither the parties nor *amicus curiae* dispute that compensatory fines should be vacated upon the settlement of the litigation between the parties. What is disputed is whether coercive civil fines should also be vacated or left to the discretion of the trial court to be vacated in whole or in part.

The Unions contend that all civil contempt sanctions, whether compensatory or coercive, imposed during the prior proceedings must be vacated when the litigation in which they were imposed is settled by the parties. The Unions rely primarily on the seminal case of *Gompers* for this position. The *amicus* brief asserts that coercive civil contempt fines have the dual purpose of coercing compliance with the court's orders and of vindicating the court's authority. This latter purpose forms the basis for the further assertion that the trial court has the discretion to refuse to vacate or to modify the amount of the sanctions if the court determines that maintaining the fines would vindicate the authority of the court even where, as here, the parties jointly move to vacate or to modify the sanctions. While recognizing that in the context of vindicating the authority of the court such civil fines are similar to criminal fines, which survive the settlement of the underlying litigation, the *amicus* brief asserts that the civil nature of the contempt is not turned criminal by the court's efforts at self-vindication. *See United States v. Wendy*, 575 F.2d 1025, 1029 n.13 (2d Cir. 1978).

In support of the assertion that *Gompers* does not mandate that all civil contempt fines, whether compensatory or coercive, be vacated upon the settlement of the underlying civil litigation, the *amicus* brief cites us to the recent decision of *Clark v. International Union, United Mine Workers*, 752 F. Supp. 1291 (W.D. Va. 1990), which arose from the same labor dispute involved in the present appeal. In *Clark*, after determining that the prospective fines imposed upon the unions were civil coercive fines, the court refused to vacate these fines upon the settlement of the underlying labor dispute and civil litigation. The district court determined that *Gompers* does not apply to civil contempt fines imposed in a *completed* proceeding prior to settlement of the underlying dispute. Apparently, in its view, the holding in *Gompers* only establishes that in cases in which a court imposes

criminal sanctions followed by settlement of the underlying dispute, no remand for civil contempt proceedings may take place in connection with the case.

*United States v. Work Wear Corp.*, 602 F.2d 110 (6th Cir. 1979), is primarily relied upon by the district court for this position. In *Work Wear*, the Anti-Trust Division of the Justice Department brought a suit against Work Wear which led to a settlement that required Work Wear to divest itself of certain subsidiaries. When this did not occur within the deadline specified in the Court's order, the government obtained civil contempt fines against Work Wear for each day the divestiture did not occur beyond the deadline. Eventually, these fines amounted to over one million dollars. The parties ultimately agreed to a reduction of approximately one-half of these fines but the Court refused to follow this agreement. Upon appeal, the Sixth Circuit upheld that refusal on the basis that the lower court had not abused its discretion in refusing to reduce the fines. Mootness of the fines was not discussed. The *Clark* Court found, nevertheless, that by implication *Work Wear* stands for the proposition that cessation of the contemptuous act does not moot the obligation to pay coercive contempt fines imposed before the end of the contemptuous conduct.

In response, the Unions assert that *Clark*, *Work Wear* and the other cases relied on in *Clark* are distinguishable on several grounds. First, the Unions assert that in *Work Wear* the underlying dispute was not *totally* settled. In addition, the Unions assert that these cases can be distinguished on the ground that they were brought by governmental agencies to vindicate public rights and in such cases the courts should review a settlement to ensure that it protects those too numerous and ill-informed to protect their own interests. In contrast, the present case involves only private parties to civil litigation which has been fully settled.

We need not address the merit of these distinctions. The *Clark* Court expresses an eloquent rationale in support of its determination that the Unions' mootness argument would undermine the efficacy of civil contempt sanctions and a court's power to enforce its orders by the use of such sanctions. We do not disagree with the sentiment inherent in the *Clark* Court's rationale.

We believe, however, that while we must follow federal law in our determination of whether a particular contempt sanction is criminal or civil for purposes of determining the proper application of federal constitutional protections, *Hicks v. Feiock*, 485 U.S. 624, 630 (1988), the issue whether civil contempt sanctions are mooted by subsequent settlements by the private parties to the litigation is a matter of state law. While our Supreme Court has not had the opportunity to address this particular issue, we believe *Local 333B, United Marine Division v. Commonwealth*, 193 Va. 773, 71 S.E.2d 159, *cert. denied*, 344 U.S. 893 (1952), and *United Steelworkers, Local 8417 v. Newport News Shipbuilding & Dry Dock Co.*, 220 Va. 547, 260 S.E.2d 222 (1979), indicate that our courts should rigidly adhere to procedures that maintain the distinction between civil and criminal contempt and that the maintenance of this distinction includes the consequences that follow when private parties settle all issues following the imposition of civil contempt sanctions, whether characterized as compensatory or coercive fines. In adopting this view, we believe the authority of the court will be well defined, the rights of the parties will be protected, and the power to vindicate the authority of the courts will be maintained in an orderly fashion.

In *Local 333B*, the Court approved the procedure of transferring a criminal contempt proceeding from the equity side to the law side of the court and of changing the style of the case to reflect that the Commonwealth had intervened as a party plaintiff to prosecute the Union for criminal contempt. This approach is consistent with the well recognized principle that criminal contempt is a matter between the government and the contemnor and the sentence imposed is punitive and in the public interest since it is imposed to vindicate the authority of the court and to deter by way of example others who would violate court orders. In *Steelworkers*, the Court prohibited the imposition of criminal sanctions in a civil proceeding and denied a request for a subsequent proceeding to secure compensatory civil sanctions for the plaintiff. Implicit in these holdings, in our view, is the requirement that our courts should follow procedures designed to inform the parties of the true nature of the proceedings, while preserving the power of the courts to vindicate their authority. The view which we adopt is also consistent with principles we glean from the United States Supreme Court cases.

In contempt cases, both civil and criminal relief have aspects that can be seen as either remedial or punitive or both: when a court imposes fines and punishments on a contemnor, it is not only vindicating its legal authority to enter the initial court order, but it is also seeking to give effect to the law's purpose of modifying the contemnor's behavior to conform to the terms required in the order.

*Hicks*, 485 U.S. at 635.

■ In the present case, the coercive civil fines were intended to coerce the Unions into compliance with the court's injunctive order for the benefit of the Companies. These fines also necessarily had the incidental purpose and effect of vindicating the authority of the court. In this respect, all coercive civil contempt sanctions vindicate to some degree the authority of the court. In our view, however, the mere fact that a civil sanction imposed to coerce compliance also vindicates a court's authority does not require that we maintain discretion in the court to refuse to vacate such sanctions upon settlement of the underlying dispute and litigation between the private parties. Vindication of the court's authority, the acknowledged purpose of criminal contempt sanctions, remains available by criminal contempt proceedings conducted with appropriate constitutional protections for the contemnor. "When the main case is settled, every proceeding which was dependent on it, or a part of it, was also necessarily settled, of course, without prejudice to the power and right of the court to punish for contempt by proper proceedings." *Gompers*, 221 U.S. at 451.

` ■ In summary, while we recognize the magnitude of the violations of the trial court's order in this case and the justifiable concern the court had with compliance with its order, we hold that civil contempt fines imposed during or as a part of a civil proceeding between private parties are settled when the underlying litigation is settled by the parties and the court is without discretion to refuse to vacate such fines. This result follows even though such fines may serve the incidental purpose of vindicating the court's authority. The court's authority in such cases may be vindicated in subsequent criminal proceedings between the Commonwealth and the contemnor conducted with appropriate constitutional protections afforded to the contemnor.

Accordingly, the fines now pending in this appeal are moot and we remand this case to the trial court with directions to vacate these fines in accordance with this opinion.

*Reversed and remanded.*

Cole, J., concurred.

Baker, J., dissenting.

I respectfully disagree with the finding of the majority in this case and would affirm the judgment of the trial court.