INTERNATIONAL UNION, UNITED MINE WORKERS
OF AMERICA, et al.

v.

COVENANT COAL CORP., et al.

Nos. 1006-89-3 and 1007-89-3

Decided March 26, 1991*

\* Petition for rehearing granted April 24, 1991.

COUNSEL

James J. Vergara, Jr. (Robert H. Stropp, Jr.; William O. Schults; James M. Haviland; John Gibney; Michael Passino; Vergara & Associates; General Counsel of International Union, United Mine Workers of America; McIntyre, Haviland & Jordan; Shuford, Rubin, Gibney & Dunn; Passino & Hildebrand, on briefs), for appellants.

Deanis L. Simmons (Robert M. Galumbeck; Gardner G. Courson; A. Bruce Clarke; Matthew Keen; Dudley, Galumbeck & Simmons; Ogletree, Deakins, Nash, Smoak & Stewart, on brief), for appellees.

OPINION

**KOONTZ, C.J.**—This appeal arises from two contempt orders entered by the Circuit Court of Tazewell County against the International Union and District 28 Union of the United Mine Workers of America (Unions), appellants. Our appellate jurisdiction for this case is based on Code § 19.2-318, which authorizes this Court to hear appeals from a judgment for any civil or criminal contempt.

The contempt citations stemmed from an action filed on May 9, 1989 by Covenant Coal Corporation, Middle Creek Energy, Inc. and J K & G Coal Corporation (Companies), appellees, seeking to enjoin violations of Virginia's right to work law. While numerous issues are raised by both parties on appeal, we address only one issue which is dispositive of this case. That issue is whether the circuit court improperly imposed criminal contempt fines on

appellants in violation of their constitutional protections.[1] On review, we find that the circuit court erroneously imposed criminal contempt fines on the Unions.

The Companies are involved in the coal processing business in Tazewell County. The Unions represent employees of the coal industry in that region of Virginia, although there is dispute over whether the Unions actually represent employees of the Companies. Regardless, on May 8, 1989, the Unions initiated a strike against the Companies in protest of unfair labor practices allegedly employed by the Companies.

On May 10, 1989, the circuit court entered a temporary injunction prohibiting the Unions from interfering with ingress and egress at the Companies' facilities through the use of violence, force, picketing, or threats; prohibiting the possession of weapons at or near designated entrances; and prohibiting the use of tire puncturing devices. The injunction also detailed picketing guidelines to which the Unions were to adhere. Thereafter, numerous apparent violations of the injunction occurred. In response, the circuit court entered a rule to show cause against the Unions and six individuals on May 19, 1989.

On May 26, 1989, the circuit court conducted a show cause hearing based on specific allegations that the Unions, or its members, repeatedly had violated the injunction by picketing in a prohibited manner, by placing tire puncturing devices on the roads, and by obstructing access to the Companies' facilities and public highways. After hearing extensive, and often conflicting, testimony and reviewing an array of evidence regarding culpability for the alleged incidents, the circuit court found the Unions and the individuals were in violation of its injunction. Without the presentation of any evidence to establish pecuniary losses, the court fined the International Union and the Local District 28 Union $50,000 each. However, $25,000 of those fines in each case was suspended on condition the Unions thereafter comply with the terms of the injunction. In its order adjudicating contempt, the court directed

---

[1] On brief, the Companies assert that pursuant to Rule 5A:18 the Unions have waived this issue by their failure to make a contemporaneous or specific objection in the trial court and thus have raised this issue for the first time on appeal. Accordingly, the Companies assert that the appeal on this issue should be dismissed. For the reasons expressed in the text of this opinion and in order to attain the ends of justice, we have addressed this issue notwithstanding that it was raised for the first time on appeal.

the entire amount of the fines to be paid to the Commonwealth.

On June 13, 1989, the circuit court entered another rule to show cause for twenty-four alleged violations of the injunction and conducted a hearing for that rule on June 20, 1989. Once again the court heard often conflicting testimony from numerous witnesses and reviewed a variety of evidence concerning incidents where picket guidelines were ignored, people were threatened, and property was damaged. The court acknowledged there was conflicting evidence but went on to state "the court is satisfied that there are enough instances that have been shown by weight of the evidence to satisfy this court that the injunction has been violated." The court explained that if "the court were trying a criminal case where the evidence would require guilt beyond a reasonable doubt, a different response may be gotten from the court but that's not the case here." The Companies sought compensatory fines, the revocation of the suspended fines, and "criminal or civil contempt fines" payable to the Commonwealth, along with other forms of relief. As in the previous hearing, the Companies did not present any evidence to establish an amount of pecuniary loss suffered due to the violations. Based on its findings, the court fined the International Union $175,000 and reinstated the suspended $25,000 fine. The court also fined the Local District 28 Union $75,000 and reinstated that Union's suspended $25,000 fine. Thus, the Unions were fined a total of $300,000. In its second order adjudicating contempt, entered June 23, 1989, the court again directed the Unions to pay the fines to the Commonwealth.

Upon these facts, the Unions argue on appeal that the fines were actually criminal contempt fines rather than civil contempt fines. Consequently, the Unions contend they were denied certain constitutional protections guaranteed to criminal defendants. In response, the Companies assert that the fines were coercive civil contempt sanctions properly imposed in a civil proceeding. In the alternative, the Companies assert that even if the fines are found to be criminal sanctions, the Unions were afforded the constitutional protections necessary for the imposition of such fines. Accordingly, we must determine whether the fines in this case were proper coercive civil fines designed to force compliance with the court's injunction, or whether the fines were in reality criminal sanctions imposed to vindicate the court's authority.

Before proceeding, we recognize the difficult task the trial judge faced when dealing with the multitude of events and issues generated by this case. Further, we recognize that his task was not a simple one because the distinction between civil and criminal contempt sanctions is a matter frequently involving the difficult application of well settled rules. We review these well settled rules first before addressing their application to the facts in this case.

"The characterization of [a] proceeding and the relief given as civil or criminal in nature, for purposes of determining the proper applicability of federal constitutional protections, raises a question of federal law rather than state law." *Hicks v. Feiock*, 485 U.S. 624, 630 (1988); *see also In re Winship*, 397 U.S. 358, 365-66 (1970); *Shillitani v. United States*, 384 U.S. 364, 368-69 (1966). Therefore, "the labels affixed either to the proceeding or to the relief imposed under state law are not controlling and will not be allowed to defeat the applicable protections of federal constitutional law." *Hicks*, 485 U.S. at 631; *Allen v. Illinois*, 478 U.S. 364, 368-69 (1986). In this regard, the United States Supreme Court has recognized the need to provide the States with guidance, "as a matter of federal constitutional law," so "that they [are] able to understand clearly and in advance the tools that are available to them in ensuring swift and certain compliance with valid court orders." *Hicks*, 485 U.S. at 636. Nevertheless, the multitude of reported decisions and the present appeal evince that uncertainty still exists concerning the proper utilization of those tools or options by courts in their attempts to enforce their orders in specific cases.

While we are not critical of the trial court, the present case is an example, in our view, that the difficulty or confusion in the proper utilization of the various "tools" or options available to a court to enforce its orders in a specific case generally results not from a lack of appropriate options but, rather, from the failure to initially clarify that a court has selected a criminal or civil option for that purpose. Where the character of the sanction to be imposed is clear, the court may conduct an appropriate proceeding, criminal or civil. In this context, it is not the lack of tools or options available to do the job but, rather, a lack of clear identification of the job to be done that creates the potential difficulty and confusion. We recognize, however, that punitive, compensatory and coercive remedies may be sought and that a court may ad-

judge a party guilty of both civil and criminal contempt in the same proceeding so long as to the extent criminal sanctions are imposed in such a proceeding the contemnor is afforded the protection that the Constitution requires in a criminal proceeding. Nevertheless, we believe that the initial clarification of the character of the penalty which will be considered by a court and the conduct of the appropriate proceeding for that purpose will significantly lessen, if not remove, the difficulty or confusion in applying the law governing contempt proceedings. This is particularly true where, as here, an appellate court is required to determine whether criminal sanctions were improperly imposed in a civil proceeding.

"Although the distinctions between civil and criminal contempt often become blurred when applied to particular cases," *Buffington v. Baltimore County, Maryland*, 913 F.2d 113, 133 (4th Cir. 1990), *cert. denied*, 111 S. Ct. 1106 (1991), several "straightforward rules" have been established to enable courts to ascertain the character of the relief afforded. *Hicks*, 485 U.S. at 631-32. "Judicial sanctions in civil contempt proceedings may, in a proper case, be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." *United States v. United Mine Workers*, 330 U.S. 258, 303-04 (1947); *accord Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 449 (1911); *Buffington*, 913 F.2d at 133. "Where compensation is extended, a fine is imposed, payable to the complainant. Such fine must of course be based upon evidence of complainant's actual loss, and his right, as a civil litigant, to the compensatory fine is dependent upon the outcome of the basic controversy." *United Mine Workers*, 330 U.S. at 304 (footnotes omitted).

When the purpose of a proceeding and the resulting relief is to coerce a defendant into compliance with the court's order, a court under proper circumstances may resort to imprisoning the contemnor or imposing fines on the contemnor, or both. However, despite the stated purpose of the proceeding, the character of the relief granted may be either remedial or punitive depending upon the terms of the sanction and whether the contemnor has disobeyed either an affirmative or a prohibitive injunction. When civil or criminal contempt involves a party's failure to perform an affirmative act, such as produce documents, the court may resort

to imposing prison sentences or fines. Although generally a fine "is remedial when it is paid to the complainant, and punitive when it is paid to the court, . . . a fine that would be payable to the court is also remedial when the defendant can avoid paying the fine simply by performing the affirmative act required by the court's order." *Hicks*, 485 U.S. at 632. Hence, where a fine is imposed to coerce a contemnor to do what he had refused to do, the remedy is for civil contempt. *Penfield Co. v. S.E.C.*, 330 U.S. 585, 590 (1947); *Gompers*, 221 U.S. at 442. This is so because " '[o]ne who is fined, unless by a certain day he [does the act ordered], has it in his power to avoid any penalty.' " *Hicks*, 485 U.S. at 633 (quoting *Penfield Co.*, 330 U.S. at 590).

 Relief in the form of imprisonment is remedial if " 'the defendant stands committed unless and until he performs the affirmative act' " and is punitive if " 'the sentence is limited to imprisonment for a definite period.' " *Hicks*, 485 U.S. at 632 (quoting *Gompers*, 221 U.S. at 442). "In the former instance, the conditional nature of the punishment renders the relief civil in nature because the contemnor 'can end the sentence and discharge himself at any moment by doing what he had previously refused to do.' " *Hicks*, 485 U.S. at 633 (quoting *Gompers*, 221 U.S. at 442). "Imprisonment in such cases is not inflicted as a punishment, but is intended to be remedial by coercing the defendant to do what he had refused to do." *Gompers*, 221 U.S. at 442. "In the latter instance, the unconditional nature of the punishment renders the relief criminal in nature because the relief 'cannot undo or remedy what has been done nor afford any compensation' and the contemnor 'cannot shorten the term by promising not to repeat the offense.' " *Hicks*, 485 U.S. at 633 (quoting *Gompers*, 221 U.S. at 442).

 A conditional penalty is "civil because it is specifically designed to compel the doing of some act." *Hicks*, 485 U.S. at 633. The critical feature of a conditional civil penalty is that "those who are imprisoned, [or under imposition of fines], until they obey the order, 'carry the keys of their prison in their own pockets.' " *Penfield Co.*, 330 U.S. at 590 (quoting *In re Nevitt*, 117 F. 448, 461 (8th Cir. 1902)). More accurately stated, conditional civil penalties allow contemnors to purge themselves by rectifying their contemptuous acts. If the contemnor's release from prison or fine is conditioned upon his willingness to comply with

the court's affirmative order, the sanction must be viewed as remedial and therefore civil in nature. *See Hicks*, 485 U.S. at 634; *Shillitani*, 384 U.S. at 370; *Buffington*, 913 F.2d at 133. Thus, a court in a civil proceeding "may also impose a determinate sentence *which includes a purge clause*." *Hicks*, 485 U.S. at 634 (quoting *Shillitani*, 384 U.S. at 370 n.6)(emphasis added).

■■■ "The distinction between refusing to do an act commanded, —remedied by imprisonment [or conditional fine] until the party performs the required act; and doing an act forbidden, — punished by imprisonment for a definite term [or unconditional fine]; is sound in principle, and generally, if not universally, affords a test by which to determine the character of the punishment." *Gompers*, 221 U.S. at 443. In *Gompers*, the Court explained if the defendant acts in a manner prohibited by the court, "the disobedience is a thing accomplished. Imprisonment cannot undo or remedy what has been done, nor afford any compensation for the pecuniary injury caused by the disobedience. If the sentence is limited to imprisonment for a definite period, the defendant is furnished no key, and he cannot shorten the term by promising not to repeat the offense. Such imprisonment operates, not as a remedy coercive in its nature, but solely as punishment for the completed act of disobedience." 221 U.S. at 442-43.

■■■■ The distinction between affirmative orders and those which are prohibitive is consistent with the rationale for conditional civil penalties, which are premised on a contemnor's ability to purge himself. A contempt sanction based on an affirmative order addresses an ongoing contemptuous act that, due to its ongoing nature, may be purged at any moment by the contemnor's performance of the mandated act. To the contrary, a contempt sanction based on a prohibitive order addresses accomplished or future acts that cannot be purged at any moment since there is nothing to purge at the time a finding of contempt is made. Admittedly, contemptuous acts arising from prohibitive orders and the resulting sanctions, including "conditional prospective" sanctions, can be avoided by compliance with the orders. However, the purge of a contemptuous act through compliance with an order is not equivalent to the avoidance of a sanction through compliance with an order. Based on these notions, the United States Supreme Court has stated that where the contemptuous act consists of the defendant performing a prohibited act, "[t]he only possible reme-

dial relief for such disobedience [is] to impose a fine for the use of [the] complainant, *measured in some degree by the pecuniary injury caused by the act of disobedience.*" *Gompers*, 221 U.S. at 444 (emphasis added).

It should be noted that the Virginia Supreme Court and the United States Supreme Court have recognized that categorizing contempts as civil or criminal based on the relief sought and the relief afforded is not a simple or clear determination.

> "[I]f the case is civil and punishment is purely remedial, there is also a vindication of the court's authority. On the other hand, if the proceeding is for criminal contempt and the [sanction] is solely punitive, to vindicate the authority of the law, the complainant may also derive some incidental benefit from the fact that such punishment tends to prevent a repetition of disobedience. But such indirect consequences will not change [a sanction] which is merely coercive and remedial, into that which is solely punitive in character, or *vice versa.*"

*Local 333B, United Marine Div. v. Commonwealth*, 193 Va. 773, 779-80, 71 S.E.2d 159, 163, *cert. denied*, 344 U.S. 893 (1952) (quoting *Gompers*, 221 U.S. at 443).

In *Gompers*, the trial court found the defendants were in contempt for violating the terms of an injunction enjoining them from supporting a boycott. As a result, the trial court sentenced them to jail for definite terms. The Supreme Court noted that by that decree the complainant took nothing and was granted "no relief whatever." *Gompers*, 221 U.S. at 444. After deciding the contempt proceeding was civil, the Court ruled that "as the act of disobedience consisted not in refusing to do what had been ordered, but in doing what had been prohibited by the injunction, there could be no coercive imprisonment." *Id.* at 449. The Court further declared "[t]he only possible remedial relief for such disobedience would have been to impose a fine for use of complainant, measured in some degree by the pecuniary injury caused by the act of disobedience." *Id.* at 444. Thus, the Court noted there was a departure "between the procedure adopted and the punishment imposed, when, in answer to a prayer for remedial relief, in the equity cause, the court imposed a punitive sentence appropriate only to a proceeding at law for criminal contempt." *Id.* at 449.

In *United Steelworkers, Local 8417 v. Newport News Shipbuilding & Dry Dock Co.*, 220 Va. 547, 260 S.E.2d 222 (1979), the trial court granted a temporary injunction that restrained the Union and its members from engaging in certain strike-related activities. A show cause hearing was held in which the company merely presented evidence of violations by the defendant union while making no effort to obtain reimbursement for any losses caused by the violations and introducing no evidence of pecuniary loss. Thereupon, the court imposed upon the union an unconditional $5,000 fine made payable to the Commonwealth, from which it could not purge itself by future compliance with the injunction. *Id.* at 551, 260 S.E.2d at 225. Relying on *Gompers*, the Virginia Supreme Court found that the fine could "only be construed as punishment for past conduct," and therefore the trial court "committed reversible error in imposing criminal contempt penalties in a civil contempt proceeding." *Id.*

From these decisions we are able to summarize the well settled rules governing civil and criminal contempt proceedings. When conducting a criminal contempt proceeding based on either affirmative or prohibitive injunctions, a court may utilize both determinate prison sentences and unconditional fines in an effort to vindicate the court's authority and to deter future acts of contempt. When conducting a civil contempt proceeding based on an *affirmative* injunction, to coerce the defendant to comply with the injunction, the court may impose conditional coercive civil penalties — including determinate prison sentences — that include a purge clause or compensatory fines to reimburse the complainant for losses sustained as a result of the defendant's act of contempt. Finally, if a court conducts a civil contempt proceeding based on a *prohibitive* injunction, the court may only impose a compensatory fine "measured in some degree by the pecuniary injury caused by the act of disobedience." *Gompers*, 221 U.S. at 444.

In the present case, there is no dispute that the hearings were intended to be civil contempt proceedings. The trial court clearly stated it was trying a civil case rather than a criminal one. The hearings were between the Unions and the Companies and were part of the main cause rather than separate proceedings between the Unions and the Commonwealth, which is expected in criminal cases. *See Gompers*, 221 U.S. at 444-45. The relief sought by the Companies was remedial relief to coerce the Unions into comply-

ing with the injunction and to compensate the Companies for losses. *See Hicks*, 485 U.S. at 631; *Gompers*, 221 U.S. at 441-42; *Newport News Shipbuilding*, 220 Va. at 549, 260 S.E.2d at 224. Finally, the standard of proof required in the hearings was not guilt beyond a reasonable doubt as required in criminal cases. *See Hicks*, 485 U.S. at 632. While none of these factors is solely dispositive of the character of the proceedings, the combination of all of these factors indicates the hearings were civil proceedings.

The character of the relief afforded in this case, though related to the civil nature of the proceedings, is a separate matter. In order to determine whether the fines imposed on the Unions were civil or criminal, we must assess the character of the injunction and the nature of the violations. We also need to determine the purpose of the relief and to evaluate the type of relief granted.

The Unions or those acting in concert with them were enjoined from placing tire puncturing devices in the roads, from threatening the Companies' employees, and from picketing in certain manners. The injunction did not require the Unions to perform any affirmative acts, but was purely prohibitive in nature. Thus, the Unions were found in contempt of the injunction only for doing prohibited acts. The Unions' acts of disobedience were accomplished and could not be undone. The Unions could not change what had already occurred by promising to do or not do some future act.

The trial court's apparent purpose for imposing the fines was to coerce the Unions to comply with the injunction. The fines could not have been meant to compensate the Companies since the fines were made payable to the Commonwealth. Moreover, the lack of evidence concerning monetary losses incurred by the Companies, or the Commonwealth, indicates that the fines were not compensatory. Therefore, the fines must have been intended to coerce the Unions to refrain from the prohibited acts or, in the alternative, to vindicate the court's authority.

Despite any apparent conscious purpose for the fines, the design and effect of the fines must be considered. Here, there were in essence two types of fines. First, there were the clearly unconditional fines imposed on the Unions, the two $25,000 unsuspended fines from the first contempt hearing and the $175,000 and $75,000 fines from the second contempt hearing. Second, there

were the two suspended $25,000 fines from the first contempt hearing that were subsequently reinstated in the second contempt hearing.

Unquestionably, the first type of fines is governed by the Supreme Court of Virginia's decision in *Newport News Shipbuilding*, a case which involved essentially identical facts. In both cases, the trial court, in a civil proceeding, found a union defendant in contempt for violating an injunction prohibiting the union from engaging in certain strike-related activities. Also, both trial courts received evidence of violations while receiving no evidence of pecuniary losses. Thereafter, both courts imposed upon the unions unconditional fines payable to the Commonwealth. As in *Newport News Shipbuilding*, we find the unconditional fines can only be considered punishment for past acts and, therefore, are criminal in nature regardless of any coercive side effects.

In addressing the remaining formerly suspended $25,000 fines, we rely on the *Gompers* decision, which continues to be guiding law. Admittedly, in one sense, the suspended fines might be considered conditional based on the fact that the Unions could have avoided them by complying with the injunction in the future. However, viewed in the proper light, the Unions could not purge or undo their contemptuous acts that initially gave rise to the suspended fines. Thus, the suspended fines may also be viewed as punishment for past acts, although triggered by some future act. Though the *Gompers* case concerned defendants sentenced to prison for violating a prohibitive injunction, the Court's holding is applicable to the present case. There, the United States Supreme Court plainly stated that the only remedial, and therefore civil, relief available where a defendant has performed a forbidden act is a fine payable to the complainant, measured in some degree by the pecuniary loss suffered as a result of the violation. Therefore, despite the apparent conditional nature of the suspended fines, they cannot be viewed as civil since they were not payable to the Companies nor measured by any pecuniary loss resulting from the violations. Consequently, all of the fines imposed on the Unions must be characterized as criminal regardless of the trial court's intent to coerce the Unions to comply with the injunction.

Finally, we must determine whether the trial court's imposition of criminal fines on the Unions in a civil proceeding was reversible error. The United States Supreme Court has held a

court may adjudge a party guilty of both civil and criminal contempt in the same proceeding. *United Mine Workers*, 330 U.S. at 298-300. However, this may be done only if the defendant's "rights in the criminal trial are not diluted by the mixing of civil with criminal contempt." *Id.* at 301. "[C]riminal penalties may not be imposed on someone who has not been afforded the protections that the Constitution requires of such criminal proceedings, including the requirement that the offense be proved beyond a reasonable doubt." *Hicks*, 485 U.S. at 632; *accord Gompers*, 221 U.S. at 444; *see also Newport News Shipbuilding*, 220 Va. at 551, 260 S.E.2d at 225 (trial court committed reversible error in imposing criminal contempt penalties in a civil contempt proceeding).

In the present case, the trial court held a civil proceeding in which the Unions were found in contempt of the injunction. The court then imposed criminal fines on the Unions. However, based on the trial court's unequivocal assertion on the record that it was not utilizing a beyond a reasonable doubt standard of proof, we find that the court imposed the criminal fines based on a burden of proof other than guilt beyond a reasonable doubt. Therefore, the Unions were denied their constitutional protections, which are mandated when a party is subjected to criminal penalties. Accordingly, we reverse the judgment of the trial court.

*Reversed.*

Cole, J., concurred.

Baker, J., dissenting.

I respectfully disagree with the finding of the majority in this case and would affirm the judgment of the trial court.