COURT OF APPEALS OF VIRGINIA

Present:   Judges Callins, White and Bernhard
Argued at Williamsburg, Virginia

**PUBLISHED**

HEATHER FORD, SOMETIMES KNOWN AS
 HEATHER D'ANNE FORD

v.       Record No. 1025-24-1

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE KIMBERLEY SLAYTON WHITE
SEPTEMBER 30, 2025

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
James C. Lewis, Judge

(Scott F. Hallauer; Hallauer Law Firm, on brief), for appellant.
Appellant submitting on brief.

Justin M. Brewster, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.

Following a bench trial, Heather D'Anne Ford was convicted of contempt for making

threats of violence to a witness in violation of Code § 18.2-456(A)(2).  On appeal, Ford argues

her conviction should be overturned because the evidence is insufficient to find that the target of

her threat, a spectator of a proceeding who is also the spouse of a party to the proceeding, was a

"witness" as contemplated by Code § 18.2-456(A)(2).

This appeal presents a question of first impression for the Court.  We are tasked with

deciding whether the Commonwealth produced enough evidence to establish the target of the

threat as a "witness" as set forth by Code § 18.2-456(A)(2).  In doing so, however, we must

define the word "witness" as it is used in Code § 18.2-456(A)(2)—a task not yet undertaken by

the legislature nor the judiciary of the Commonwealth.  In finding that the trial court

misinterpreted the word "witness" and that the evidence is insufficient to prove that Michelle

Ford was a witness within the meaning of the code section, this Court reverses the decision of the trial court and dismisses Heather D'Anne Ford's conviction.

STATEMENT OF FACTS

On February 28, 2023, Michelle Ford ("Michelle") attended a hearing between her husband, Christopher Ford ("Christopher"), and his ex-wife, Heather Ford ("Ford"), the appellant, in the Juvenile and Domestic Relations District Court ("JDR") for the City of Virginia Beach.  The hearing was conducted to determine whether Christopher had failed to pay Ford court-ordered child support.  Michelle accompanied Christopher to the hearing "for emotional support."

During the entire hearing, Michelle sat in the third bench from the door at the back of the courtroom.  After the hearing was concluded, Ford passed by Michelle and said, "They'll never find your body."  Upset, Michelle responded, "You're so disrespectful.  Don't talk to me."

Shortly thereafter, Michelle filed a criminal complaint with a Virginia Beach magistrate, who then issued a misdemeanor warrant for disturbing the peace in violation of Virginia Beach City Ordinance 23-10 and Code § 18.2-415.  On May 22, 2023, the General District Court for the City of Virginia Beach found Ford guilty of "contempt of court [§] 18.2-456(A)(2) threaten witness."[1]  Ford appealed to the circuit court.

---

[1] There is limited evidence available regarding why a warrant was originally issued against Ford for disturbing the peace, but she was ultimately tried for and convicted of contempt under Code § 18.2-456(A)(2) in the district court.  At trial, the Commonwealth stated,

> prior [defense] counsel . . . relayed to me . . . the reason that the contempt charge had come up and that [Ford] had been convicted of [contempt] was due to . . . the public defender's . . . request at the end of trial in the general district court . . . that Ms. Ford be found guilty of contempt [rather than disturbing the peace].  Now, I'll qualify this by saying I was not present any more than [defense counsel] was, but that was what [prior counsel] had relayed to me.

The Circuit Court for the City of Virginia Beach heard the misdemeanor appeal trial on April 25, 2024. Testifying for the Commonwealth, Michelle stated that she was in court during a hearing between her husband and his former wife "just basically for emotional support" of her husband. When asked what the hearing was for, she responded, "I'm not sure if it was custody or if it was a child support case or a show cause." To the Commonwealth attorney's question, "[b]ut you were basically there to support your husband," Michelle said, "[y]es, sir."

Also testifying for the Commonwealth was Christopher, who stated that the court hearing involved "a show cause for nonpayment of child support." He testified that Michelle "was there to support me." Christopher described what he observed as his former wife walked past his current wife after the court hearing. He provided the dates of the two marriages but no other information.

Following the Commonwealth's case-in-chief, Ford made a motion to strike, arguing that Code § 18.2-456(A)(2) is "a status offense" and that "[t]he person that is threatened with violence has to be a witness, a party[,] or a juror or an officer of the court." Ford then argued that Michelle "was none of those things" because she was not called as a witness at the hearing and there was no evidence that either party intended to call her to testify. The trial court disagreed. In denying her motion to strike, the trial court found that "the word witness can be construed broadly enough to include [Michelle] at the time of the alleged statements."

Ford was convicted of contempt in violation of Code § 18.2-456(A)(2). Ford then filed a "Motion to Reopen and Dismiss" in which she argued that the evidence was insufficient to find Michelle was a witness as defined by Code § 18.2-456(A)(2) and that there was insufficient evidence to show that any judicial proceedings were obstructed or interrupted. On May 30,

The record lacks any corroborating evidence for the Commonwealth's claim. For that reason, this Court cannot address any issue involving the approbate-reprobate doctrine.

2024, the court heard and denied both motions, then proceeded to sentencing. Ford was sentenced to ten days' incarceration with ten days suspended on certain terms. This appeal followed.

ANALYSIS

Ford assigns one error to the trial court's ruling: that the evidence was insufficient to convict her for contempt. Her assigned issue continues, arguing that Michelle did not fall into one of the defined classes of people enumerated by the statute. As she did at trial, Ford relies on Michelle's testimony that she was present in court on the day of the offense solely to provide "emotional support" for Christopher. She further relies on the fact that there was no evidence to suggest that Michelle had participated or was anticipated to participate in the proceedings as a testifying or cooperating witness. The Commonwealth, however, argues on appeal that Michelle had factual knowledge related to Christopher's failure to pay child support and, thus, could have been a potential witness, advocating the position that the term "witness" includes any person who has relevant information to a proceeding, regardless of whether they are ever called to testify or participate in any capacity.

To determine whether the evidence was sufficient to find Michelle qualified as a "witness," we must first define what it means to be a witness as contemplated by the statute. As Code § 18.2-456(A)(2)'s "witness" has never been defined, we address this issue as a matter of first impression. We hold that the term "witness" within this code section includes only those who are testifying, have testified, or who are or were reasonably expected by a party to testify in a proceeding before the court. Finding that Michelle is not a witness within the meaning of the statute, we reverse the circuit court and dismiss Ford's conviction under Code § 18.2-456(A)(2).

## A. STANDARD OF REVIEW

The scope of the term "witness" within Code § 18.2-456(A)(2) is a question of statutory interpretation. "Questions of statutory interpretation . . . are subject to *de novo* review on appeal, and we owe no deference to the circuit court's interpretation of the statutory scheme." *Esposito v. Va. State Police*, 74 Va. App. 130, 133 (2022). "This same *de novo* standard of review applies to determining the proper definition of a particular word in a statute." *Miller v. Commonwealth*, 64 Va. App. 527, 537 (2015). While we view the facts in the light most favorable to the Commonwealth, the prevailing party below, we will nonetheless review de novo the scope and application of the statute under which the defendant was convicted. *Blake v. Commonwealth*, 288 Va. 375, 380 (2014) (citing *Muhammad v. Commonwealth*, 269 Va. 451, 479 (2005) ("the legal viability of the Commonwealth's theories" for imposing guilt under a statute are reviewed de novo)).

## B. DEFINITION OF "WITNESS"

### 1. THE TERM "WITNESS" IS AMBIGUOUS

"The Virginia Supreme Court has long held that 'when analyzing a statute, we must assume that "the legislature chose, with care, the words it used . . . and we are bound by those words as we [examine] the statute.""" *Eley v. Commonwealth*, 70 Va. App. 158, 163 (2019) (alterations in original) (quoting *Doulgerakis v. Commonwealth*, 61 Va. App. 417, 420 (2013)). "[C]ourts 'are required to ascertain and give effect to the intention of the legislature, which is usually self-evident from the statutory language.'" *Id.* (alteration in original) (quoting *Armstead v. Commonwealth*, 55 Va. App. 354, 360 (2009)). "To best ascertain the intent, when the language of the statute is unambiguous, we are bound by the plain meaning of that language." *City of Hampton v. Williamson*, 302 Va. 325, 333 (2023) (quoting *Blake*, 288 Va. at 381). "Although our focus is generally on the plain meaning of unambiguous statutory language, we

must also consider that language in the context in which it is used." *Potter v. BFK, Inc.*, 300 Va. 177, 182 (2021). Statutory language is ambiguous only "when it may be understood in more than one way, or simultaneously refers to two or more things. If language . . . lacks clearness and definiteness, an ambiguity exists." *Williams v. Commonwealth*, 61 Va. App. 1, 9 (2012) (quoting *Lee-Warren v. Sch. Bd. of Cumberland Cnty.*, 241 Va. 442, 445 (1991)).

Code § 18.2-456(A)(2) states that:

> The court and judges may issue attachments for contempt, and punish them summarily only in the following cases: . . . Violence, or threats of violence, to a judge or officer of the court, or to a juror, witness, or party going to, attending, or returning from the court, for or in respect of any act or proceeding had, or to be had, in such court.

Code § 18.2-456 does not define "witness." Although Titles 8.01, 18.2, and 19.2 refer to a "witness" in various contexts, they do not contain a *general* definition of "witness."

To determine whether the word "witness" is ambiguous, we must consider the term in context. "A statute is not to be construed by singling out a particular phrase." *Eberhardt v. Fairfax Cnty. Employees' Retirement Sys. Bd. of Trustees*, 283 Va. 190, 195 (2012) (quoting *Virginia Elec. & Power Co. v. Bd. of Cnty. Supervisors*, 226 Va. 382, 388 (1983)).

Considering the context, the statute is undoubtedly ambiguous. The word "witness" has two primary definitions: "1. Someone who sees, knows, or vouches for something . . . [or] 2. Someone who gives testimony under oath or affirmation (1) in person, (2) by oral or written deposition, or (3) by affidavit." *Witness*, *Black's Law Dictionary* (12th ed. 2024). "Under one definition, a witness must merely have knowledge about an event. Under the other, a witness must testify under oath." *Herrera-Martinez v. Garland*, 22 F.4th 173, 183 (4th Cir. 2022). The Commonwealth advocates the first definition, while Ford argues for the second. Thus, Code § 18.2-456(A)(2) may reasonably be read in more than one way. As the statute can "be

understood in more than one way," we conclude that the term "witness" as used in this statute is ambiguous. *Williams*, 61 Va. App. at 9.

## 2. *"WITNESS" DOES NOT INCLUDE MERE SPECTATORS OF COURT PROCEEDINGS*

When the statutory language is subject to more than one interpretation, "we must apply the interpretation that will carry out the legislative intent behind the statute." *Kozmina v. Commonwealth*, 281 Va. 347, 349-50 (2011) (quoting *Conyers v. Martial Arts World of Richmond, Inc.*, 273 Va. 96, 104 (2007)). To ascertain the legislative intent behind this statute, it is necessary to explore the nature and purpose of criminal contempt.

Virginia's criminal contempt jurisprudence is deeply rooted in both common law and in statutory developments. Under our common law, the power of the courts to punish for contempt has been recognized as an inherent authority essential for maintaining the dignity and orderly functioning of the judiciary. "It has long been recognized and established that a court is invested with power to punish for contempt." *Higginbotham v. Commonwealth*, 206 Va. 291, 294 (1965). The "power to punish for contempt is inherent in, and as ancient as, courts themselves." *Carter v. Commonwealth*, 2 Va. App. 392, 395 (1986). The Commonwealth's trial judges have the power to enter "summary contempt" orders for what are referred to as "crimes against the administration of justice." These "crimes" that would constitute contempt have been enumerated by the General Assembly in Code § 18.2-456(A)(2).

Under Virginia law, "[i]t is elementary that any act which is calculated to embarrass, hinder, or obstruct the court in the administration of justice is contempt." *Potts v. Commonwealth*, 184 Va. 855, 859 (1946). This includes any "act in disrespect of the court or its processes, or which obstructs the administration of justice, or tends to bring the court into disrepute." *Robinson v. Commonwealth*, 41 Va. App. 137, 142 (2003); *Carter*, 2 Va. App. at 396. As articulated by Sir William Blackstone, contempt includes anything that demonstrates "a

gross want of that regard and respect, which, when once courts of justice are deprived of, their authority (so necessary for the good order of the kingdom) is entirely lost among the people." *Burdett v. Commonwealth*, 103 Va. 838, 843 (1904) (quoting 1 William Blackstone, Commentaries on the Laws of England *285-86 (1769)). Criminal contempt is designed to "preserve the power and vindicate the dignity of the court." *United Steel Workers v. Newport News Shipbuilding and Dry Dock Co.*, 220 Va. 547, 549 (1979).

As Virginia history and precedent informs, the purpose of criminal contempt is to protect and preserve the sanctity of judicial proceedings. "Although criminal statutes are to be strictly construed against the Commonwealth, the appellate court must also 'give reasonable effect to the words used' in the legislation." *Green v. Commonwealth*, 72 Va. App. 193, 202 (2020) (quoting *Johnson v. Commonwealth*, 37 Va. App. 634, 639 (2002)). "[T]he Code of Virginia constitutes a single body of law[,] and . . . related sections can be looked to for interpretation of a section [in which] the same phraseology is used." *Nelson v. Commonwealth*, 73 Va. App. 617, 624 (2021) (second, third, and fourth alterations in original). The term "witness" is peppered throughout the Code. For example, in the context of witnesses from out of state who testify in our trial courts, a witness is said to "include a person whose testimony is desired in any proceedings or investigation by a grand jury or in a criminal action, prosecution or proceeding." Code § 19.2-272. In the context of defining the rights of witnesses, among those rights are various forms of "Courtroom assistance," including "a separate waiting area during court proceedings." Code § 19.2-11.01. In the context of compensation for travel expenses, a witness is grouped in as one who can seek that reimbursement from the court as someone who "is required to appear at the hearing of any case." Code § 16.1-276. In the context of bribery, it is a crime to bribe someone to "to prevent such person from testifying as a witness in any civil or criminal proceeding." Code § 18.2-441.1.

Thus, while the trial court erred in holding that the statutory definition of "witness" under Code § 18.2-456(A)(2) was "broad enough" to, in practice, include any person within the courtroom, Ford's proposed definition of "witness" did not hit the mark, either. Ford's assertion that a witness must have been actively participating in the proceedings to be subject to the statute's definition is too restrictive to properly effectuate the statute's purpose—to enable judges the ability to protect the sanctity and dignity of judicial proceedings, as well as respond to and mitigate obstructions of justice within the courtroom. Therefore, based on the nature and purpose of criminal contempt, and the plain language otherwise contained in the statute, this Court holds that for the purposes of Code § 18.2-456(A)(2), a person qualifies as a witness if he or she is testifying, has testified, or is or was reasonably expected by a party to testify in a proceeding before a court.

C. *THE EVIDENCE DID NOT PROVE MICHELLE WAS A WITNESS UNDER CODE § 18.2-456(A)(2)*

Having defined "witness" under Code § 18.2-456(A)(2), we now turn to whether there was sufficient evidence for Michelle to fall under the class of "witness" in this case. We find that there was not.

To find that Michelle was a witness under Code § 18.2-456(A)(2), and therefore to sustain Ford's conviction, the Commonwealth had to prove beyond a reasonable doubt that Michelle had information that was expected or desired to be given, or had been given, as testimony in a proceeding before a tribunal of the Commonwealth. The Commonwealth failed to carry that burden.

The only fact the Commonwealth established was that Michelle is married to Christopher and that Michelle attended the JDR proceeding for "emotional support." The conclusion the Commonwealth attempts to draw from those two facts is more akin to complete speculation than to rational inferences. By establishing that Michelle is Christopher's wife, the Commonwealth

attempts to frame as reasonable the inference that marriage necessitates knowledge of all relevant aspects of the other spouse's finances, affairs, and activities.

The Commonwealth never elicited testimony from Michelle to determine whether she had any knowledge of Christopher's finances nor whether she had any information about his child custody and support arrangements. Conversely, Michelle's testimony only established that she was not even sure of what the hearing was for, but that she was only there as moral support for her now-husband. Furthermore, the Commonwealth never elicited testimony from Christopher to find out if he expected his current wife to provide any testimony relevant in his JDR proceeding. He only remarked that Michelle was there "to support" him. This evidence does not establish that Michelle had testified or had been reasonably expected to testify by a party. The inferences the Commonwealth attempts to draw here are nothing more than speculation and not based on the scant evidence established at trial.

Because the Commonwealth failed to establish that Michelle was a witness under Code § 18.2-456(A)(2), the evidence was insufficient to convict Ford. We reverse and dismiss Ford's conviction.

CONCLUSION

For the foregoing reasons, we reverse the decision of the trial court and dismiss Ford's conviction.

*Reversed and dismissed.*