COURT OF APPEALS OF VIRGINIA

Present: Judges Russell, Malveaux and Senior Judge Clements
Argued at Richmond, Virginia

PUBLISHED

MELINDA NEWMAN MILLS

OPINION BY
v.      Record No. 1630-18-2      JUDGE WESLEY G. RUSSELL, JR.
MAY 14, 2019

ROBERT ALEXANDER MILLS

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Phillip L. Hairston, Judge

Eileen McNeil Newkirk (The McNeil Law Group, on briefs), for
appellant.

Benjamin R. Rand (Blackburn, Conte, Schilling & Click, P.C., on
brief), for appellee.

Melinda Mills (wife) appeals the circuit court's rulings finding her in contempt for violating three provisions of the parties' property settlement agreement, which was incorporated into their final decree of divorce. Wife also challenges the reasonableness of the court's award of attorney's fees to Robert Mills (husband). For the reasons that follow, we affirm in part, reverse in part, and remand the case to the circuit court for further proceedings consistent with this opinion.

BACKGROUND

"When reviewing a [circuit] court's decision on appeal, we view the evidence in the light most favorable to the prevailing party, granting it the benefit of any reasonable inferences." Kahn v. McNicholas, 67 Va. App. 215, 220 (2017) (alteration in original) (quoting Congdon v. Congdon, 40 Va. App. 255, 258 (2003)). Accordingly, we review the evidence in the light most favorable to husband as the prevailing party below.

The parties were divorced by final decree dated May 20, 2015. The final decree incorporated the parties' July 19, 2012 property settlement agreement (PSA), which included terms governing issues related to their two children, one of whom had reached the age of majority before commencement of the instant proceedings.

Section 6.1 of the PSA required wife "to maintain in full force and effect the existing policy or policies of life insurance insuring her life, providing coverage of at least $50,000 and to name and maintain the children as the irrevocable sole primary beneficiaries thereof, until the youngest child turns age 25" and further directed that wife "not pledge or hypothecate said insurance or borrow against any cash value." Section 8.2 provided that once the elder child was no longer eligible for dependent status, "the tax dependency exemption for [the younger child] shall be alternated and claimed by each parent every other year . . . ."

In addition to these financial obligations, the PSA included provisions related to the custody and care of the parties' children. Section 2.3 of the PSA required the parties "to foster love, affection, and respect between the children and both parents" and to refrain from doing "anything to interfere with the love and affection of the children for the other party."

Finally, Sections 11.2 and 11.3 of the PSA provided for one party to pay the other's expenses, including attorney's fees and costs, incurred upon enforcement or breach of the agreement.

In April 2018, husband filed a motion to show cause alleging that wife had violated Sections 6.1 and 8.2 of the PSA. He alleged that wife, in violation of Section 6.1 of the PSA, had cashed out the existing whole life insurance policy that named the children as beneficiaries. He further asserted that wife had claimed the parties' youngest child as a dependent on her tax returns in violation of Section 8.2 of the PSA, which assigned that right to him for the tax years in question. In June 2018,

husband filed another motion to show cause, in which he alleged that wife had violated Section 2.3 of the PSA "by talking negatively and vulgarly to the children about [him]."

In response, wife denied that she had willfully violated any provision of the PSA. Additionally, she filed a motion for sanctions arguing that the show cause related to Section 6.1 of the PSA had been filed in bad faith.

Ultimately, the circuit court held a hearing on the motions to show cause on August 9, 2018. Prior to the hearing, wife withdrew her motion for sanctions. At the outset of the hearing, in addition to reiterating her position that none of her conduct constituted a willful violation of the PSA, wife argued that at least some of the contempt allegations sounded in criminal contempt as opposed to civil contempt and that she had not been afforded certain procedural safeguards regarding criminal cases. Having heard wife's argument in this regard, the circuit court elected to proceed with the hearing.

Regarding the allegations related to Section 6.1 of the PSA, wife admitted that, without notifying husband, she stopped paying the premiums for and cashed out the whole life insurance policy that had been in effect since 2005. Furthermore, in response to husband's questioning, when asked if this action violated the terms of Section 6.1 of the PSA, wife responded: "That section, yes, sir."

Despite the admission, wife argued that she should not be held in contempt because she had term insurance through her employer, and thus, there was in place a policy of insurance with at least $50,000 in coverage. According to wife, this constituted "substantial compliance" with the provision, and thus, contempt should not lie. Furthermore, she argued that husband could not be

damaged by any noncompliance with the provision unless and until she died without coverage in place, and therefore, contempt could not lie until that time.[1]

In response to the allegations regarding Section 8.2 of the PSA, wife testified that she claimed the younger child on her income taxes for tax years 2015, 2016, and 2017, and conceded that, pursuant to the terms of the PSA, she should not have done so for 2016. Given that husband's entitlement to claim the parties' younger child as a dependent was contingent on the older child no longer being eligible to be claimed as a dependent on husband's return, wife asserted that she did not know she was not supposed to claim the younger child until husband brought up the issue in October 2017. She noted that the younger son had not lived with husband between 2015 and 2017 and that husband never notified her that the older son, despite having reached majority, was no longer eligible to be claimed as a dependent. Wife further testified that, upon learning of her error, she offered to pay husband the difference in his tax liability or refund amount for the year in question. Evidence established, however, that when wife first was alerted to the issue, she argued that, regardless of the language of the PSA, she was entitled to claim the younger child as a dependent because he lived with her and that to do otherwise would violate IRS rules, a claim she now concedes was in error.[2] The parties stipulated that the difference in husband's liability for tax year 2016 was $1,066.

Wife denied violating Section 2.3 of the PSA. In an attempt to establish the alleged violation, husband played a video of an argument between wife and the parties' older child that the child had recorded and sent to husband. The video showed wife making numerous negative statements about husband using what, charitably, could be described as colorful language. Wife did

---

[1] Although wife's argument fails to do so, we recognize the problems inherent in using the contempt power to modify the behavior of someone who has died.

[2] Testimony also established that wife has a degree in accounting and prepared not only her tax returns but, on occasion, had prepared returns for others.

not dispute the behavior shown on the video, but denied that it was part of a larger pattern or that she had acted similarly in front of her younger child. She argued that, because the older son was no longer a minor at the time of the incident, her conduct towards him did not run afoul of the terms of Section 2.3 of the PSA.

Husband also sought a total of $5,130 in attorney's fees for having to litigate to obtain the benefits he was entitled to under the PSA. Although wife had withdrawn her motion for sanctions at the beginning of the hearing, the requested amount included the costs associated with preparing to defend against the motion. Wife objected to the total, arguing that it was unreasonable "considering the amount in controversy and the remedies that were sought." She acknowledged that the charges incurred prior to June 7, 2018 were reasonable, but contested any amount above that. She argued that certain discovery was unnecessary and that fees incurred preparing to defend against the motion for sanctions she filed were unnecessary because the motion had been withdrawn and no preparation was needed in any event because "the only thing necessary to preclude a motion for sanctions is to prevail in the underlying show cause[,]" which husband's counsel had to prepare for regardless of what she had filed.

The circuit court issued an opinion letter, which it eventually incorporated into its final order in the case. The letter opinion expressed that the court, despite wife's objections, viewed the matters before it as civil contempt proceedings. In its order, the court found wife in "civil contempt pursuant to [Code] § 18.2-456(5) for intentional violations of Section[s] 2.3, 6.1 and 8.2 of the [PSA]." Based on "the plain language" of the PSA and wife's testimony "that she withdrew the cash value of the policy and ceased paying its premiums[,]" the court ordered wife "to obtain, within thirty days . . . a whole life insurance policy that . . . include[s] a death benefit of not less than $50,000.00 [and] name[s] and maintain[s] the children as the irrevocable sole primary beneficiaries thereof, until the youngest child turns age 25." Finding that wife "intentionally prevented [husband]

- 5 -

from claiming the child dependency tax exemption in 2016 in violation of the" PSA, the court further ordered her to pay husband $1,066, which the court found "represent[ed] the damages incurred by [husband] on his 2016 taxes." The court also found that wife "had intentionally interfered with the love, affection, and respect of the children for [husband]" and imposed a fine of $1,000 as "the most appropriate sanction to remedy the situation and prevent further violations . . . ." The fine was suspended in its entirety, "conditioned upon no future violations." The court then awarded $5,130, "representing reasonable attorney's fees," to husband.

Wife filed a motion to reconsider. Wife challenged the classification of the contempt proceedings as civil rather than criminal and, based on that argument, asserted that her due process rights had been violated. She also challenged the sufficiency of the evidence, specifically asserting there had been no showing of damage to husband, and she reasserted other arguments she had made at the hearing. She also contended that the awarded fees were unreasonable due to her "good faith cooperation" and her withdrawal of the motion for sanctions. The circuit court denied the motion on October 11, 2018, and this appeal followed.

On appeal, wife contends that the circuit court erred in classifying as civil rather than criminal its findings of contempt with respect to the life insurance and "love and affection" provisions and further asserts that, in so doing, the court failed to provide certain procedural safeguards in violation of her due process rights. As she did below, wife also contends that the court erred in finding her in contempt in light of her substantial compliance with the life insurance provision, her good-faith efforts with respect to remedying the tax deduction issue, and the inapplicability of the "love and affection" provision to a child who had reached the age of majority. Wife further challenges the amount of the award of attorney's fees as unreasonable.

ANALYSIS

I.  Standard of Review

"[W]e review the exercise of a court's contempt power under an abuse of discretion standard." Zedan v. Westheim, 60 Va. App. 556, 574 (2012) (alteration in original) (quoting Petrosinelli v. People for the Ethical Treatment of Animals, 273 Va. 700, 706 (2007)). "[A] trial court by definition abuses its discretion when it makes an error of law." Id. (alteration in original) (quoting Shooltz v. Shooltz, 27 Va. App. 264, 271 (1998)). Whether a contemnor has been found in civil or criminal contempt is a question of law we review *de novo*. See, e.g., Buffington v. Baltimore County, 913 F.2d 113, 133 (4th Cir. 1990) ("[A trial] court's description of a contempt sanction as either civil or criminal is not determinative and must be scrutinized independently by the appellate court.").

In reviewing a finding of contempt where "evidence was taken *ore tenus*[,] . . . the conclusion on the facts stands upon the same plane as the verdict of a jury." Drake v. Nat'l Bank of Commerce of Norfolk, 168 Va. 230, 240 (1937). As such, the circuit court's factual findings may "not be disturbed on appeal unless plainly wrong or without evidence to support" them. Ware v. Ware, 203 Va. 189, 195 (1962). Unlike its factual findings, the circuit court's reading of the parties' PSA presents a question of law that we review *de novo*. Everett v. Carome, 65 Va. App. 177, 185 (2015).

II.  Civil Versus Criminal Contempt

Contempt citations "are of two classes — those prosecuted to preserve the power and to vindicate the dignity of the court, and those instituted to preserve and enforce the rights of private parties. The former are criminal and punitive in their nature; the latter are civil and remedial." Roanoke Water Works Co. v. Roanoke Glass Co., 151 Va. 229, 235-36 (1928). In determining whether a contempt proceeding is civil or criminal, the classification of the underlying proceeding

from which the contempt arises is not dispositive because criminal contempt may arise from and be tried within a civil proceeding.  See, e.g., United States v. United Mine Workers, 330 U.S. 258 (1947); Robertson v. Commonwealth, 181 Va. 520 (1943) (reviewing a criminal contempt citation imposed on an attorney for failure to obey court order to produce a document in a personal injury case).

Both types of proceedings can result in "punishment" as generally understood. Accordingly, "[i]t is not the fact of punishment, but rather its character and purpose, that often serve to distinguish between the two classes of cases." Gompers v. Buck's Stove & Range Co., 221 U.S. 418, 441 (1911). "A proceeding for civil contempt partakes more of the nature of a remedial civil proceeding than it does of the nature of a criminal proceeding.  Its main purpose is to procure the imposition of a punishment which will afford remedial relief to the parties injured." Epps v. Commonwealth, 47 Va. App. 687, 711 (2006) (quoting Kessler v. Commonwealth, 18 Va. App. 14, 16 (1994)), aff'd, 273 Va. 410 (2007).  In general, a person found in civil contempt can avoid any sanction imposed by simply providing the relief to which the other party was entitled; in contrast, in cases of criminal contempt "[t]he punishment, whether fine or imprisonment, is deemed to be criminal if it is determinate and unconditional[.]" Powell v. Ward, 15 Va. App. 553, 558 (1993) (quoting Bagwell v. Int'l Union, United Mine Workers of Am., 244 Va. 463, 475 (1992)).

Although simply stated, these general principles can be difficult to apply.  In most instances in which a court sanctions a party for failing to obey a prior order of the court, *both* the dignity and power of the court and the rights of the party who benefitted from the prior order are in some measure vindicated.  As both the Supreme Court of the United States and the Supreme Court of Virginia have recognized:

> [I]f the case is civil and punishment is purely remedial, there is
> also a vindication of the court's authority.  On the other hand, if

the proceeding is for criminal contempt and the [sanction] is solely punitive, to vindicate the authority of the law, the complainant may also derive some incidental benefit from the fact that such punishment tends to prevent a repetition of disobedience. But such indirect consequences will not change [a sanction] which is merely coercive and remedial, into that which is solely punitive in character, or *vice versa*.

Local 333B, United Marine Div. of Int'l Longshoremen's Ass'n v. Commonwealth, 193 Va. 773, 779-80 (quoting Gompers, 221 U.S. at 443), cert. denied, 344 U.S. 893 (1952). With this understanding, we apply these principles to the circuit court's contempt findings.

### III. Section 6.1 of the PSA

Section 6.1 of the PSA provided reciprocal obligations on the parties regarding life insurance that they had in place at the time of the divorce. Specifically, Section 6.1 obligated wife "to *maintain* in full force and effect the *existing policy or policies* of life insurance insuring her life, providing coverage of at least $50,000 and to name and maintain the children as the irrevocable sole primary beneficiaries thereof, until the youngest child turns age 25." (Emphasis added). In addition, she could "not pledge or hypothecate said insurance or borrow against any cash value."

It is undisputed that, in 2005, the parties each obtained whole life insurance policies and that those policies were in effect at the time the parties entered into the PSA. It is also undisputed that, with the PSA in effect, wife "cashed in" that policy and that, at the time of the hearing, she no longer had that policy. Based on the undisputed evidence, the circuit court found wife in violation of her obligations under Section 6.1 and in contempt of the court's order incorporating the PSA.

Despite her admission that the existing whole life policy is no longer in place because she stopped paying premiums and withdrew its cash value and her admission at the hearing that her actions did violate Section 6.1, wife asserts that she did not violate Section 6.1. She argues that, at the time of the hearing, she had in place a term insurance policy, provided to her as a benefit of

employment, that provided $50,000 in coverage. From this, she reasons that she did not violate Section 6.1.

Such an argument ignores the plain language of Section 6.1. The section placed upon wife the obligation to "maintain . . . the existing policy or policies of life insurance[.]" In ordinary usage, "maintain" means "to keep in a state of repair, efficiency, or validity : preserve from failure or decline[.]" Maintain, Webster's Third New International Dictionary (1981). Thus, Section 6.1 imposed a duty upon wife "to keep in a state of . . . validity [and] preserve from failure" existing life insurance policies, including the whole life policy purchased in 2005. By ceasing to pay the premiums and withdrawing the cash value of the policy, wife failed "to keep [the policy] in a state of . . . validity [and] preserve [it] from failure[.]" Accordingly, the circuit court did not err in finding her in contempt for a violation of Section 6.1.

That she had a term policy provided by her employer in place at the time of the hearing does not alter that, in violation of Section 6.1, she failed to maintain the *existing* policy of insurance. She had an obligation to leave in place "policy or policies of life insurance" that *existed* at the time of the PSA. When she elected not to leave the whole life policy in place, wife violated Section 6.1 no matter what other insurance arrangements she may have put in place after she entered into the PSA.[3]

By way of sanction, the circuit court ordered wife "to obtain, within thirty days . . . a whole life insurance policy that . . . include[s] a death benefit of not less than $50,000.00 [and] name[s]

_____

[3] Wife argues that, at the time she entered into the PSA, her then employer also provided term life insurance as a benefit, and thus, such term insurance could be the insurance policy referred to in Section 6.1. This argument fails for two reasons. First, given wife's change in employers after entering into the PSA, the new policy was just that—a new policy, and was not an "existing policy" that she could "maintain." Second, the PSA did not require wife to maintain *an* existing policy, it required her "to maintain in full force and effect the existing policy or *policies*[,]" which would include the whole life policy at issue even if there were other policies in place.

and maintain[s] the children as the irrevocable sole primary beneficiaries thereof, until the youngest child turns age 25." The circuit court's order in this regard is wholly remedial and for the benefit of husband as the injured party. By ordering wife to obtain a policy sharing at least some characteristics of the policy she impermissibly allowed to lapse,[4] the circuit court's sanction is an attempt to restore husband to something approximating the position he would have been in if wife had not violated the PSA and the circuit court's order incorporating the PSA. As such, it is a classic civil contempt sanction, see Epps, 47 Va. App. at 711, and the circuit court did not err by imposing it.

### IV. Section 8.2 of the PSA

Section 8.2 of the PSA governed the parties' ability to claim their children as dependents on the income tax returns. Section 8.2 provides that wife was entitled to claim the parties' younger child as a dependent and husband was entitled to claim the parties' older child as a dependent until the older child "is no longer eligible to be claimed as a dependent[.]" Once the older child could no longer be claimed, the parties were to alternate claiming the younger child as a dependent "every other year thereafter so long as [the younger child] is eligible to be claimed as a dependent[.]"

It is undisputed that the older child ceased being eligible to be claimed as a dependent and that, as a result, husband was entitled to claim the younger child as a dependent for tax purposes for the 2016 tax year. Furthermore, it is undisputed that wife claimed the younger child as a dependent for tax year 2016, preventing husband from claiming him, which cost husband $1,066.

Having agreed that she improperly deprived husband of the ability to claim the younger child and that her actions in this regard cost husband $1,066, wife argues that contempt did not lie

---

[4] The fact that the circuit court did not order wife to obtain a policy with the exact characteristics (insurance company rating, cash value, death benefit, etc.) at the time of the breach does not alter the character of the sanction. Even if it did not make husband whole, the sanction provided some remedial relief.

because she was unaware that the elder child was no longer eligible to be claimed as a dependent, and therefore, her failure to comply with the agreement was not willful. She also claims she was willing to pay husband the amount he lost as soon as she was made aware of the amount. Husband disputes the factual bases for these arguments.

If believed, wife's version of events might be a defense to the contempt charge. However, the circuit court, having the opportunity to see and hear the witnesses testify, rejected wife's story of how she mistakenly came to claim the younger child as a dependent, finding that she "intentionally prevented [husband] from claiming the child dependency tax exemption in 2016[.]" Because the circuit court heard the evidence *ore tenus*, its rejection of wife's testimony binds us as if it were a jury verdict, Drake, 168 Va. at 240, and thus, we can set the rejection aside only if it is "plainly wrong or without evidence to support" it, Ware, 203 Va. at 195.

There was sufficient evidence to support the circuit court's conclusion. The circuit court did not have to accept wife's claim that she was so unaware of her eldest child's living arrangements that she did not know he was no longer eligible to be considered a dependent for tax purposes. This is especially so given that her story at the hearing differed from what she initially had claimed. Specifically, the explanation she offered at the hearing largely was refuted by an e-mail she wrote when husband first raised the issue with her. At that point, she did not claim that she had mistakenly claimed the younger child because of a misunderstanding as to the older child's status, but rather, asserted she was entitled to claim the younger child *no matter what the PSA provided*. In the e-mail, she asserted that the PSA did not have to be followed because doing so would violate "the IRS rule," "break the law," and allow husband to "lie on [his] taxes."[5] Wife's initial rejection of husband's claim under the express terms of the PSA and lack of an offer to reimburse him at that

___

[5] Wife eventually conceded that the agreement's provision allowing husband to claim the younger child as a dependent did not violate the law or IRS rules.

time undercuts her later claim that she immediately offered to reimburse him for what he lost as a result of her failure to follow the PSA.

Given the standard of review, we cannot say that the circuit court erred in finding that wife intentionally violated her obligations under Section 8.2 of the PSA. Accordingly, the circuit court did not err in holding her in contempt of the court's order incorporating the PSA.

By way of sanction, the circuit court ordered wife pay husband "$1,066.00, representing the damages incurred by" husband as a result of the breach of Section 8.2. The circuit court's order in this regard is wholly remedial and for the benefit of husband as the injured party. By ordering wife to reimburse husband for the amount that her violation of Section 8.2 cost him, the circuit court's sanction seeks to restore to husband the benefits of the PSA to which he was entitled. As such, it is a classic civil contempt sanction, see Epps, 47 Va. App. at 711, and the circuit court did not err by imposing it.

## V. Section 2.3 of the PSA

Wife also challenges the circuit court's finding of contempt based on its conclusion that she "intentionally interfered with the love, affection, and respect of the children for" husband in violation of Section 2.3 of the PSA. She argues that the circuit court erred in finding that the evidence was sufficient to establish a violation of the provision and by imposing a criminal contempt sanction in what the circuit court maintained was a civil contempt proceeding. For the following reasons, we agree with wife that the circuit court erred in imposing a criminal sanction in what it maintained was a civil contempt proceeding.[6]

---

[6] Because we conclude that the circuit court's decision pertaining to Section 2.3 of the PSA must be reversed because the circuit court applied the wrong standard of proof in arriving at its conclusion, we do not reach wife's other argument regarding Section 2.3 of the PSA. See Commonwealth v. Swann, 290 Va. 194, 196 (2015) ("The doctrine of judicial restraint dictates that we decide cases on the best and narrowest grounds available." (internal quotation marks and citations omitted)).

For the alleged violation, the circuit court imposed "a fine of $1,000" and then suspended the fine "conditioned upon no future violations of Section 2.3" of the PSA. The term "fine" is generally recognized as a punitive sanction.[7] Absent some indication otherwise, fines are payable to the court and not a private party. Thus, unlike the other contempt sanctions imposed, the fine did not require wife to pay money to husband or take some affirmative action (such as purchasing a replacement insurance policy) for his benefit. As such, its primary purpose was punitive rather than remedial, which supports a conclusion that it was a criminal contempt sanction.

That conclusion is strengthened because, unlike the affirmative obligations imposed by Sections 6.1 and 8.2 of the PSA, the pertinent portion of Section 2.3 imposes a negative obligation, prohibiting wife from taking any action that would "interfere with the love and affection of the children for" husband. Because they address past wrongful conduct, contempt sanctions for violating prohibitory orders generally are considered criminal. As we observed in Int'l Union, United Mine Workers of Am. v. Covenant Coal Corp., 12 Va. App. 135, 144 (1991),

> [a] contempt sanction based on an affirmative order addresses an ongoing contemptuous act that, due to its ongoing nature, may be purged at any moment by the contemnor's performance of the mandated act. To the contrary, a contempt sanction based on a prohibitive order addresses accomplished or future acts that cannot be purged at any moment since there is nothing to purge at the time a finding of contempt is made. Admittedly, contemptuous acts arising from prohibitive orders and the resulting sanctions, including "conditional prospective" sanctions, can be avoided by compliance with the orders. However, the purge of a contemptuous act through compliance with an order is not

---

[7] We have recognized that courts have used the term "fine" to describe a payment that is made to another party as remediation as opposed to a punitive sanction payable to the court. See Int'l Union, United Mine Workers of Am. v. Covenant Coal Corp., 12 Va. App. 135, 142 (1991). However, in such cases, the "fine" is "payable to the complainant . . . [and] must of course be based upon evidence of complainant's actual loss, and his right, as a civil litigant, to the compensatory fine is dependent upon the outcome of the basic controversy." Id. (quoting United Mine Workers, 330 U.S. at 304 (footnotes omitted)). Here, the order does not direct payment to husband and the $1,000 amount of the fine was not tied to any evidence of loss of husband because his only evidence of monetary loss related to attorney's fees, which were addressed in another section of the circuit court's order.

- 14 -

equivalent to the avoidance of a sanction through compliance with an order. Based on these notions, the United States Supreme Court has stated that where the contemptuous act consists of the defendant performing a prohibited act, "[t]he only possible remedial relief for such disobedience [is] to impose a fine for the use of [the] complainant, *measured in some degree by the pecuniary injury caused by the act of disobedience.*"

(quoting Gompers, 221 U.S. at 444). The alleged violation at issue here dealt with a conversation that wife had with the couple's older child in the past. Accordingly, the sanction was imposed for conduct that was definite and determinate as opposed to a sanction to force the performance of some future act.[8] As such, the sanction the circuit court imposed for wife's alleged violation of Section 2.3 sounds in criminal, as opposed to civil contempt.

Having concluded that the sanction sounded in criminal contempt, we must conclude that the circuit court erred in stating that the proceeding regarding the alleged violation of Section 2.3 was a civil contempt proceeding. The circuit court's error in classifying the type of proceeding necessarily caused other errors. For example, given the circuit court's repeated statements that the proceeding was for civil contempt, we must assume that a civil burden of proof as opposed to the criminal "beyond a reasonable doubt" standard was utilized. This requires reversal because "criminal penalties may not be imposed on someone who has not been afforded the protections that the Constitution requires of such criminal proceedings, including the requirement that the offense be proved beyond a reasonable doubt." Id. at 149 (quoting Hicks v. Felock, 485 U.S.

---

[8] The fact that the circuit court suspended payment of the fine on condition that wife not violate the provision again does not alter the character of the penalty. See Covenant Coal, 12 Va. App. at 148 (holding that "despite the apparent conditional nature of the suspended fines, they cannot be viewed as civil since they were not payable to the [injured litigants] nor measured by any pecuniary loss resulting from the violations. Consequently, all of the fines imposed . . . must be characterized as criminal regardless of the trial court's intent to coerce the Unions to comply with the injunction.").

624, 632 (1988)); see also, Powell, 15 Va. App. at 559.[9]  Accordingly, the circuit court's

contempt order regarding the alleged violation of Section 2.3 of the PSA is hereby reversed.[10]

## VI.  Attorney's Fees in the Circuit Court

Consistent with the relevant provisions of the PSA, husband sought to recover the attorney's

fees he expended to vindicate his rights under the PSA.  Wife challenges the circuit court's award of

attorney's fees, arguing that the amount of the fee award is greater than any pecuniary "loss or

injury" that husband suffered as a result of wife's actions in contravention of the PSA, that no award

of fees is appropriate related to the alleged violation of Section 2.3 of the PSA because husband

offered no evidence of a monetary or other loss, and that the fee award should not have included

costs associated with husband defending against her motion for sanctions because, in her judgment,

no additional time was necessary to prepare to defend against the motion.[11]

Overall, we disagree with wife's contentions.  The circuit court did not abuse its discretion

in determining that the attorney's fees were reasonable and necessary to protect husband's rights

under both Section 6.1 and Section 8.2 of the PSA.  The fact that wife's violation of Section 6.1 of

the PSA did not result in a direct monetary award to husband, but rather resulted in an order that she

procure a new life insurance policy, did not render the attorney's fees incurred to achieve that result

either unnecessary or unreasonable.

---

[9] Although much of Powell remains good law, some portions of it on which wife relies are no longer good law.  Specifically, the portion where we held that the circuit "court should have transferred the matter to the law side of the court," 15 Va. App. at 559, is no longer valid because Virginia abolished the distinction between the law and equity sides of the court in 2006.

[10] We note that this opinion neither requires further proceedings related to the alleged violation of Section 2.3 of the PSA nor prevents the circuit court from conducting a criminal contempt hearing that affords wife all of the required protections.

[11] Wife does not assert that the rate charged by husband's attorney was unreasonable.  At the contempt hearing, wife's counsel stated that wife did "not object to the reasonableness" of the attorney's fees incurred through "June 7th[.]"

- 16 -

Although wife's arguments generally lack merit, we must reverse the circuit court's award of attorney's fees related to the alleged violation of Section 2.3 of the PSA. Section 11.3 provides that husband is entitled to recover fees that are necessary to "secur[e] compliance" with the PSA or are "incurred in connection" with a "breach" of the PSA. Given our resolution of wife's challenge to the circuit court's contempt award related to Section 2.3, it has not been established that wife breached that provision. As a result, husband has not established that he is entitled to recover attorney's fees incurred to litigate that issue. Accordingly, we remand the issue to the circuit court to determine what portion of its award of attorney's fees related to Section 2.3 of the PSA and to deduct that amount from its award of attorney's fees to husband.

## VII. Husband's Attorney's Fees on Appeal[12]

Husband requests that he be awarded the attorney's fees he incurred in defending this appeal. Consistent with Section 11.3 of the PSA, husband is entitled to an award of the fees he incurred on appeal to vindicate his rights under Sections 6.1 and 8.2 of the PSA, but not for any fees incurred related to his claims pursuant to Section 2.3 of the PSA. We remand the matter to the circuit court to take evidence on the question of attorney's fees on appeal and award husband the reasonable and necessary attorney's fees he incurred on appeal related to Sections 6.1 and 8.2 of the PSA.

---

[12] Wife also seeks an award of appellate attorney's fees. Although wife's appeal resulted in the reversal of the contempt sanction for the alleged violation of Section 2.3, it did not establish that she did not breach that section or that husband breached the PSA by bringing the show cause. Because her appeal vindicated certain constitutional protections and not any right she had under the PSA, the attorney's fees provisions of the PSA do not apply. Given the absence of a contractual provision entitling her to her attorney's fees on appeal, we find that an award of such fees is inappropriate under these facts and circumstances. See Allen v. Allen, 66 Va. App. 586, 603 (2016); see also Rule 5A:30.

CONCLUSION

For the reasons stated above, we affirm in part, reverse in part, and remand the case to the circuit court for further proceedings consistent with this opinion.

<u>Affirmed in part, reversed in part, and remanded.</u>