COURT OF APPEALS OF VIRGINIA

Present:   Judges Ortiz, Raphael and Senior Judge Annunziata
Argued at Fairfax, Virginia


EL MEHDI MARHOUM
                                                            MEMORANDUM OPINION* BY
v.        Record No. 0643-24-4                               JUDGE STUART A. RAPHAEL
                                                              AUGUST 19, 2025
CHAIMAA FEKKAK


FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
James P. Fisher, Judge

Samuel A. Leven (The Baldwin Law Firm, LLC, on briefs), for
appellant.

Sonya L. Powell (Monica Sameni; Powell Radomsky, PLLC, on
brief), for appellee.


El Mehdi Marhoum ("husband") appeals the trial court's classification, valuation, and

equitable distribution of his company, Benel Solutions LLC.  He argues that the court misapplied

Code § 20-107.3 in finding that most of Benel was marital property and improperly credited

expert testimony that the company was worth $800,000.  He also claims that the court

disregarded the equitable-distribution factors, adopted a payment timeline that was impossible to

meet, and wrongfully awarded Chaimaa Fekkak ("wife") all her attorney fees and costs.

But the trial court permissibly relied on the information it had to value the business.  The

trial court committed (at worst) harmless error in classifying the business property.  The court

properly considered all the relevant factors.  And it did not abuse its discretion in scheduling

husband's payments and in ordering husband to reimburse wife's attorney fees and costs.  So we

affirm the judgment.

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

BACKGROUND[1]

"On appeal, 'we view the evidence in the light most favorable to the prevailing party, granting it the benefit of any reasonable inferences.'" *Sobol v. Sobol*, 74 Va. App. 252, 260 n.1 (2022) (quoting *Mills v. Mills*, 70 Va. App. 362, 368 (2019)). "We accordingly review the record in the light most favorable to wife." *Id.*

Husband co-founded Benel Solutions LLC with a business partner in December 2014. Husband and the partner were 50/50 owners.

Husband and wife married on July 6, 2016.

By 2018, Benel was in poor shape and husband had to work "to keep employees from quitting" and "to keep clients from leaving." Husband discovered that his partner was undermining the business and sought to either consolidate ownership or sell the entire company. But the partner refused to sell and sued husband in September 2018. Husband responded with a $7.5-million countersuit. Husband and wife drew from their savings and incurred debt to finance the litigation. Husband and partner settled their claims, but the settlement terms are not in the record. In December 2018, husband purchased the partner's interest under a "buyout agreement" using $30,000 in marital funds.

After husband became Benel's sole owner, he worried about his employees' loyalty to his former partner. Benel lost some employees and husband distrusted some others who remained. Wife tried to help by supporting employee morale, including by making food for team lunches, helping to pick gifts for employees, and hosting a football watch-party. She reviewed company emails, social media posts, and holiday cards. She attended social events with husband to help him build networks in the community. And she "did everything for [husband] at home" to make

---

[1] The record in this case was partially sealed. "To the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts . . . . The remainder of the previously sealed record remains sealed." *Levick v. MacDougall*, 294 Va. 283, 288 n.1 (2017).

"his professional life easier." Benel recovered by the end of 2019, when husband secured a large contract.

In May 2020, Benel received a $150,000 Economic Injury Disaster Loan ("EIDL"). The amount of that loan was later increased to $500,000. The company began repaying that loan in November 2022 at $2,516 per month. Benel also received two rounds of Paycheck Protection Program ("PPP") loans that were forgiven.

Husband and wife each filed for divorce in 2021. Despite contentious pre-trial disputes, the parties stipulated to a custody-and-visitation arrangement for their minor child and to the equitable distribution of many marital asserts. The case proceeded to trial for equitable distribution of the remaining property, including Benel, and for argument on the allocation of attorney fees.[2]

Husband testified at trial that he earned between $120,000 and $125,000 annually during the marriage and $150,000 annually after the separation. He admitted using marital funds to finance the Benel litigation and that the company was in a better state due to the couple's "financial suffering." Husband claimed that he had little cash in his personal banking accounts and could not afford to pay wife a large award. But wife pointed to the substantial payment husband was expecting from the sale of the marital home and to the possibility that he could use funds from Benel, which he owned outright. Husband conceded that he failed to disclose all his financial accounts in discovery and that he used Benel's credit card to pay $83,000 in divorce-related attorney fees and costs.

On the second day of trial (January 18, 2023), wife's expert Mark Vogel testified to Benel's value. Based on documents including financial statements, a general ledger, tax returns,

_____

[2] At trial, the parties disputed a variety of issues. But husband assigns error only to the trial court's equitable distribution of Benel, the payment schedule ordered by the court, and the award of attorney fees to wife. Our factual discussion here is limited to those issues.

and bank statements, he opined "to a reasonable degree of professional certainty" that Benel's "intrinsic value" was "$800,000." On husband's objection, the court excluded Vogel's expert report. Husband also objected to Vogel's evaluation because he had completed his report on June 30, 2022, so he could not opine on Benel's value as of the trial date. The court overruled that objection.

On direct examination, Vogel described three business-valuation methods and explained why he chose the income method over the others, noting husband's use of Benel as a "pass-through entity" to fund personal expenses. Vogel admitted on cross-examination that his calculations had resulted in a $784,114 valuation that he "rounded up to $800,000." He acknowledged that Benel had an outstanding $500,000 EIDL loan that did not appear in his valuation. But he said that the income method did not call for considering that item.

In closing arguments—held on August 30, 2023, seven months after the previous day of trial—husband asked the court to disregard Vogel's valuation because it was not current to the trial date. He argued that Vogel's failure to consider the $500,000 EIDL loan and his not having taken into account a 2022 reduction in income undermined the validity of Vogel's opinion. Husband also argued that at least half of Benel remained his separate property because he owned that half before the marriage. He added that the marital half had commingled with his separate half, making all of Benel his separate property. He said there was insufficient evidence that Benel had increased in value during the marriage, so no such increase could be marital.

Applying Code § 20-107.3(A)(3)(e), the trial court found that husband's separate half of Benel was transmuted in 2018 when he purchased the marital half with marital funds, making Benel entirely marital. But the court credited husband's retracing of his original half-interest. The court used the $30,000 buyout of the partner's share to conclude that Benel was worth $60,000 in 2018. Applying subsection (A)(3)(a), the court found that Benel had increased in

- 4 -

value from $60,000 to $800,000 between 2018 and 2022, and that the increased value was marital. So the court valued the marital portion of Benel at $770,000, giving husband a $30,000 credit for his original pre-marital ownership.

Husband argued that he could not afford to pay the resulting award. The court asked about the $360,000 that husband received from the sale of the marital home, but husband responded that he had only $5,800 in the bank. Wife said that husband could pay a judgment using the house proceeds or using a Benel account. The court awarded wife a total $401,503.83, requiring the first $200,000 by October 1 and the remainder by November 1. The court said that it found wife's testimony credible and "I just don't believe" husband, finding that "he's not telling the truth on a number of matters," including his claimed inability to meet the payment schedule.

After a separate hearing on February 28, 2024, the trial court awarded wife $141,625 in attorney fees and costs. Husband had stipulated to the reasonableness of wife's fees. Wife complained that she had been forced to prepare a case on issues that husband ultimately abandoned on the first day of trial. The court adopted wife's arguments as its own and added that husband had withheld the parties' child from wife and delayed his own deposition. Those facts, said the court, revealed husband's "intransigence" and "intractability."

The court's final order memorialized its bench rulings on the equitable-distribution and attorney-fee issues. Husband noted a timely appeal.

ANALYSIS

A. *The trial court did not err in valuing, classifying, and distributing Benel.*

"[A]ll trial court rulings come to an appellate court with a presumption of correctness." *Sobol*, 74 Va. App. at 272 (alteration in original) (quoting *Wynnycky v. Kozel*, 71 Va. App. 177, 192 (2019)). "'Because making an equitable distribution award is often a difficult task, "we rely

heavily on the discretion of the trial judge in weighing the many considerations and circumstances that are presented in each case."'" *Id.* (quoting *Howell v. Howell*, 31 Va. App. 332, 350 (2000)).  So "'a circuit court's "equitable distribution award will not be overturned unless the [appellate court] finds an abuse of discretion, misapplication or wrongful application of the equitable distribution statute, or lack of evidence to support the award."'" *Id.* (alteration in original) (quoting *Dixon v. Dixon*, 71 Va. App. 709, 717-18 (2020)).  "In challenging the court's decision on appeal, the party seeking reversal bears the burden to demonstrate error." *Id.* at 272-73 (quoting *Barker v. Barker*, 27 Va. App. 519, 535 (1998)).

### 1. The trial court did not err in finding that Benel was worth $800,000.

"'[T]rial courts valuing marital property for the purpose of making a monetary award must determine from the evidence that value which represents the property's intrinsic worth' to the parties." *Wright v. Wright*, 61 Va. App. 432, 457 (2013) (quoting *Bosserman v. Bosserman*, 9 Va. App. 1, 6 (1989)).  "Intrinsic value is a very subjective concept . . . ." *Id.* (quoting *Howell*, 31 Va. App. at 339).  "Determining intrinsic value must depend on the facts of the case." *Id.* "We affirm if the evidence supports the findings and if the trial court finds a reasonable evaluation based on proven methodology and on the application of it to the particular facts of the case." *Id.* (quoting *Howell*, 31 Va. App. at 339).

Husband posits three reasons for rejecting Vogel's valuation: (1) that Vogel rounded to $800,000 from his calculation of $784,114; (2) that the result was incredible because Vogel did not account for the EIDL loan and used outdated and "varied" sources; and (3) that the valuation date was not current to the evidentiary hearing.  We are not persuaded.

To start, nothing in the record shows that it was improper for Vogel to round up to $800,000.  Despite rounding up, Vogel testified "to a reasonable degree of professional certainty" that Benel's intrinsic value was $800,000.  Husband did not offer evidence to show

that rounding up was improper or otherwise violated the applicable standard of care for a valuation expert. Accordingly, we will not disturb the court's adoption of Vogel's valuation because a reasonable fact finder could have credited Vogel's $800,000 valuation.

Vogel's decision not to account for the EIDL loan did not invalidate his valuation because, as Vogel explained, the loan was irrelevant to the income method of valuation. Our Court has accepted a trial court's reliance on the "income approach." *See Patel v. Patel*, 61 Va. App. 714, 723-24 (2013). Crediting Vogel's testimony, the trial court was not required to invalidate Vogel's valuation.

We likewise reject husband's general argument that Vogel relied on "outdated" and "varied" sources. Such quibbles go to the opinion's weight, not its sufficiency. He cites *Tittsworth v. Robinson*, 252 Va. 151 (1996), for the proposition that valuations relying on assumptions without a factual basis and disregarding variables are insufficient as a matter of law. But husband identifies no record evidence to undermine Vogel's valuation. For his part, Vogel testified that his opinion was based on the most recent available information. And Vogel added that husband's more up-to-date trial testimony had not changed his opinion. Because "[t]he 'credibility of the expert witness and the weight to be accorded the evidence' is a matter exclusively in the province of the factfinder," *deCamp v. deCamp*, 64 Va. App. 137, 155 (2014) (quoting *Lemond v. Commonwealth*, 19 Va. App. 687, 694 (1995)), we decline husband's invitation to reweigh Vogel's testimony.

Finally, husband's attack on Vogel's June 2022 valuation overstates the statutory timing requirement. True, "the trial court [must] 'determine the value of any [distributable] property as of the date of the evidentiary hearing on the evaluation issue.'" *Sobol*, 74 Va. App. at 274 (quoting Code § 20-107.3(A)). But that does not require a trial court to disregard valuation evidence that predates the hearing. We held in *Hamad v. Hamad*, 61 Va. App. 593 (2013), that

when only older information is available and the parties have failed to provide different data showing (or at least proffer) that the value has changed, the trial court may rely on the older information. *Id.* at 608-09. Husband failed to show that the $800,000 valuation was meaningfully outdated. As in *Hamad*, the trial court here understood that Benel should be valued as of the trial date, and the court did so with the only information the parties provided. *See id.* at 609 ("The court correctly acknowledged the general principle that the valuation should correspond to the evidentiary hearing and never suggested otherwise. The trial court did not make a conscious decision to . . . *disfavor* more current information.").

"[T]he 'burden is on the parties to provide the trial court sufficient evidence from which it can value their property.'" *Id.* (quoting *Bosserman*, 9 Va. App. at 5). "[A]ppellate courts 'cannot continue to reverse and remand' equitable distribution cases 'where the parties have had an adequate opportunity to introduce evidence but have failed to do so.'" *Id.* (quoting *Bowers v. Bowers*, 4 Va. App. 610, 617 (1987)). Thus, the trial court here properly credited Vogel's valuation testimony.

### 2. The trial court did not err in finding that all but $30,000 of Benel was marital property.

Because "the trial court's classification of property is a finding of fact, that classification will not be reversed on appeal unless it is plainly wrong or without evidence to support it." *David v. David*, 64 Va. App. 216, 221 (2015) (quoting *Ranney v. Ranney*, 45 Va. App. 17, 31-32 (2005)).

Code § 20-107.3(A)(3) governs the classification of property as marital or separate. Husband claims that the trial court wrongfully applied subsection (A)(3)(e), which makes marital and separate properties entirely marital when they are "commingled into newly acquired property resulting in the loss of identity of the contributing properties." He argues that the court should have applied subsection (A)(3)(d), instructing that contributed property commingled into

receiving property takes on the receiving property's character. He argues that the second half of Benel commingled into the first half, making the whole company his separate property.

Assuming without deciding that the trial court invoked the wrong subsection, the error was harmless because the court reached the right result. "[H]armless-error review [is] required in *all* cases." *Moore v. Joe*, 76 Va. App. 509, 516 (2023) (second alteration in original) (quoting *Spruill v. Garcia*, 298 Va. 120, 127 (2019)). "When it plainly appears from the record and the evidence . . . that the parties have had a fair trial on the merits and substantial justice has been reached, no judgment shall be arrested or reversed." *Id.* at 516-17 (alteration in original) (quoting Code § 8.01-678).

Code § 20-107.3(A)(3)(a) provides that "the increase in value of separate property during the marriage . . . shall be marital property only to the extent that marital property or the personal efforts of either party have contributed to such increase[]." The subsection instructs that the

> nonowning spouse shall bear the burden of proving that
> (i) contributions of marital property or personal effort were made
> and (ii) the separate property increased in value. Once this burden
> of proof is met, the owning spouse shall bear the burden of proving
> that the increase in value or some portion thereof was not caused
> by contributions of marital property or personal effort.

Husband argues that wife failed to meet her burden to prove that Benel increased in value. He says the non-owning spouse must show the value of the asset both on the date of the marriage and on the separation date. Husband argues that the $30,000 buyout of his partner did not reflect the company's intrinsic value, that it came too late in the marriage to be relevant, and that Vogel's valuation was completed too long after separation to be probative. He insists that the non-owning spouse must prove the *exact amount* of any marital increase. We disagree.

First, the trial court was justified in finding that Benel was worth $60,000 as of the 2018 buyout. Husband claims that his purchase of Benel's second half was only for settlement purposes and reflected, at most, its fair market value, not intrinsic value. But husband testified

- 9 -

that he understood the value of the partner's half at the time of purchase and that he paid $30,000 to buy out the partner's interest, consistent with a "buyout agreement." The record does not show how husband tied the buyout to a litigation settlement. Husband did not introduce any settlement agreement. Nor did he describe its terms. Husband argues that a one-time reference to fair-market value from the court showed that it believed the $30,000 figure to be just that. But husband reminded the trial court that intrinsic value controls and nothing in the record shows that the court considered the combined value of $60,000 to be anything other than Benel's total intrinsic value. Based on this record, we cannot say that the trial court's valuation finding was plainly wrong or without evidence to support it.

Second, the trial court did not err by relying on a valuation start-date that did not correspond precisely to the beginning of the marriage. The $60,000 valuation was based on the December 2018 buyout, about a year and a half into the marriage. "If husband contends that evidence of the value of [asset] on the date of his marriage to wife would have proven that he had a greater separate interest in the equity . . . , it was husband's burden to introduce such evidence." *Spaid v. Spaid*, No. 0021-22-4, slip op. at 8, 2022 Va. App. LEXIS 538, at *11 (Oct. 25, 2022).[3] But husband introduced no evidence that the value of the company declined from the date of the marriage in July 2016 until the partner buyout in December 2018. So the trial court did not err in using the $60,000 valuation based on the December 2018 partner buyout as the baseline to measure the increase in value attributable to substantial marital contribution.

We likewise see no reversible error in the court's decision to attribute the entire increase in the company's value from $60,000 to $800,000 to the parties' monetary and non-monetary contributions during the marriage. That finding is supported by wife's testimony about her personal

---

[3] Although we are not bound by our unpublished opinion in *Spaid*, Rule 5A:1(f), we find its reasoning persuasive.

contributions to the company. It is further supported by husband's admission that the couple's joint financial suffering helped to resuscitate the business. And as discussed above, the court appropriately valued Benel at $800,000 as of the trial date.

In sum, we reject husband's effort to make wife shoulder his own burden of proof. Once the trial court found that wife met her twin burdens under Code § 20-107.3(A)(3)(a), it was husband's burden to show any portion of the increase in value that was not marital. *David*, 64 Va. App. at 224. But he did not introduce any evidence to show that Benel had a higher value at the time of marriage than when husband bought out his partner's half share. He did not show that Benel increased in value after the parties separated. Nor did he assign error to the trial court's finding that he failed to carry his burden on those points. So we will not disturb the trial court's finding that all but the initial $30,000 of husband's interest in Benel was marital property.

### 3. The trial court considered the Code § 20-107.3(E) factors.

A trial court must consider the factors enumerated in Code § 20-107.3(E) when equitably distributing marital assets. *Gottlieb v. Gottlieb*, 19 Va. App. 77, 94 (1994). "The appropriate consideration of the factors entails more than a mere recitation in the record or decree that all the statutory factors have been considered or reviewed." *Id.* (quoting *Alphin v. Alphin*, 15 Va. App. 395, 405 (1992)). Still, the trial court is not required "to quantify or elaborate exactly what weight or consideration it has given to each of the statutory factors." *Id.* (quoting *Alphin*, 15 Va. App. at 405). "'[W]hen a trial judge fails to articulate sufficiently the consideration he or she has given to the statutory criteria, "we must examine the record to determine if the award is supported by evidence relevant to those factors."'" *Id.* (quoting *Alphin*, 15 Va. App. at 405).

Husband contends that the trial court disregarded all the factors. He correctly states that neither the final order nor the court's bench ruling explicitly references them. But the record shows that the trial court properly considered the factors. Indeed, the court overruled numerous

- 11 -

objections at trial to evidence relevant to the factors. And husband argued the factors in his closing argument. Husband does not identify any particular factor that the court should have approached differently. We find that the record adequately shows that the trial court considered all relevant factors in fashioning its award.

*4. The trial court's adopted payment schedule was appropriate.*

Husband contends that the trial court "set [him] up to fail and be in contempt of court" by ordering him to pay the entire award about two months after the trial. He claims there was no evidence to show he could meet such a schedule. But the record supports the trial court's decision rejecting those claims.

Husband received about $360,000 from the sale of the marital home. Husband also used Benel to pay his own attorney fees, and Benel as of July 2022 had more than $900,000 in its business checking account. The trial court was also understandably skeptical of husband's financial-hardship claims because husband failed to disclose all his personal financial accounts in discovery. Husband's lack of candor about his finances "translate[d] to the issue of his ability to pay." Although husband argues that it was "impossible" for him to meet the schedule, the court explicitly found otherwise. Based on the evidence and the court's finding, we cannot say that the trial court abused its discretion in setting the payment schedule.

B. *The trial court did not err in ordering husband to pay wife's attorney fees and costs.*

Circuit courts have a "broad discretionary authority . . . to award attorney[] fees and other costs as the equities of a divorce case . . . may require." *Sobol*, 74 Va. App. at 288 (third alteration in original) (quoting *Tyszcenko v. Donatelli*, 53 Va. App. 209, 222 (2008)). The "award must be 'reasonable under all of the circumstances revealed by the record.'" *Id.* (quoting *Mayer v. Corso-Mayer*, 62 Va. App. 713, 734 (2014)). "[W]e review a trial court's decision to

award attorney fees incurred prior to an appeal under the deferential abuse of discretion standard." *Id.*

Husband claims that the trial court's award of all wife's attorney fees and costs was based solely on wife's victory at trial, so if we reverse on his assignments of error, we should remand for the trial court to revisit the attorney-fee allocation. Because we have rejected husband's assignments of error, however, that claim is moot.

Husband next argues that wife failed to prove that all her fees were "necessary." He also says the court abused its discretion, both in finding that husband contributed to wife's fees and that husband could afford the large fee award. We are not persuaded.

We reject husband's claim that wife needed an expert to testify to the "necessity" of the fees since the parties mutually agreed at trial that their respective fees were reasonable. Moreover, expert testimony may not be needed when, as here, the attorney in a case submits "affidavits and detailed time records." *Seyfarth, Shaw, Fairweather & Geraldson v. Lake Fairfax Seven Ltd. P'ship*, 253 Va. 93, 96-97 (1997) (quoting *Tazewell Oil Co. v. United Va. Bank*, 243 Va. 94, 112 (1992)). Husband's claim that some of her fees were unnecessarily incurred is also undermined because his own fees were higher. We thus decline to second-guess the trial court's determination that wife's fees were reasonable and necessary.

The record also supports the trial court's finding that husband needlessly contributed to wife's fees and that he could afford to pay the $141,625 fee award. Husband drove up the litigation costs when he failed to comply with wife's discovery requests and refused wife's efforts to resolve various issues until the morning of trial. And husband's annual salary is approximately $150,000, not to mention the substantial funds at Benel that husband could have used (and had previously used) for personal purposes. So the court's findings and its decision to

award wife all her attorney fees and costs was supported by the record and was not an abuse of discretion.

C. *This Court denies wife's request for her appellate attorney fees and costs.*

Wife asks this Court to award her appellate attorney fees and costs. Rule 5A:30(b)(2)(C) instructs that "[i]n determining whether to make such an award, the Court is not limited to a consideration of whether a party's position on an issue was frivolous or lacked substantial merit but may consider all the equities of the case." "[T]he question of attorney fees on appeal is committed to our discretion based upon our consideration of all of the pertinent facts and circumstances." *Sobol*, 74 Va. App. at 290. Exercising that discretion, we find that the equities do not warrant awarding appellate fees to wife.

CONCLUSION

In short, the trial court's equitable-distribution findings were supported by the record, and the court did not abuse its discretion in setting husband's payment schedule or in requiring him to pay wife's attorney fees.

*Affirmed.*